THE INHABITANTS OF THE CITY OF TRENTON, PROSECUTOR AND PLAINTIFF IN ERROR, v. THE STANDARD FIRE INSURANCE COMPANY OF NEW JERSEY ET AL., DEFENDANTS IN ERROR.

---

THE INHABITANTS OF THE CITY OF TRENTON, DEFENDANT IN ERROR, v. THE STANDARD FIRE INSURANCE COMPANY OF NEW JERSEY ET AL., PLAINTIFFS IN ERROR.

Submitted March 23, 1909—Decided June 14, 1909.

1. The Tax act of 1903 (*Pamph. L., p.* 394) exempts from taxation stocks of corporations of other states held by citizens of this state when taxes have been actually assessed and paid on the corporation's property in its own state within twelve months.
2. The reinsurance reserve of fire insurance companies required by the department of banking to be set apart and maintained by such companies is not as such exempt from taxation under the Tax act of 1903. The liabilities on policies issued and outstanding being merely contingent, should not be deducted from the gross assets to ascertain the capital and accumulated surplus.

---

On error to Supreme Court, whose opinion is reported in *47 Vroom* 79.

For the city of Trenton, *Charles E. Bird, William A. Lord* and *Collins & Corbin.*

For the Standard Fire Insurance Company, *Huston Dixon* and *John W. Griggs.*

The opinion of the court was delivered by

VOORHEES, J. These are cross writs of error to review a judgment of the Supreme Court restoring and reducing a tax imposed May 20th, 1906, by the taxing authorities of the city of Trenton upon the Standard Fire Insurance Company, which tax had been set aside by the Board of Equalization of Taxes.

The assessors of Trenton levied a tax assessment against the company amounting to $245,477.81. This assessment was arrived at in the following manner:

The total assets of the company were..........$653,750.81
The following deductions were made therefrom:
Assessed value of land and building
   thereon, situate in Trenton, sepa-
   rately assessed .................. $13,050.00
Market value of bank stock, sepa-
   rately assessed ................ 19,868.00
Market value of bonds exempt from
   taxation ...................... 307,915.00
Mortgages on real estate in Mercer
   county non-taxable ............. 67,450.00
                      ——————— 408,283.00

Balance assessed by the city for taxation......$245,477.81

An appeal was taken to the county board of taxation, which sustained the assessment, and thence a further appeal to the Board of Equalization of Taxes. The latter appeal was made on the ground that the assessment above mentioned was in fact made upon the reinsurance reserve fund of the company, amounting to $246,903.05, which reserve was claimed by the company to be a liability and not an asset and therefore not properly taxable; and also upon a further ground that in the assessment were included stocks held by the company in cor-

porations outside of this state to the value of $183,921, which were not properly taxable by the laws of New Jersey because taxes had been actually assessed and paid upon the property of said companies where located within twelve months next before May 20th, 1906.

The board of equalization set aside the assessment *in toto,* holding that the reinsurance reserve should have been treated as a liability and not as a part of the accumulated surplus of the company.

To remove the finding of the board of equalization setting aside the assessment, a writ of *certiorari* was sued out by the city of Trenton.

The Supreme Court ordered that the judgment of the Board of Equalization of Taxes be reversed and that the assessment levied by the taxing authorities of the city of Trenton for personal property other than bank stock be reduced from $245,477.81 to $61,556.81, which it fixed and determined as the amount of taxes for which the company was legally liable. This reduction resulted from the determination of the court that the stocks of corporations of other states amounting to $183,921 were exempt from taxation. The court also declared that in the absence of anything to show that the insurance reserve was invested in taxable securities it must be assumed that it was actually invested in the securities exempt. From this judgment of the Supreme Court these cross writs of error have been taken, by the city to reserve the judgment as to the exemption from taxation of foreign stocks, and by the company to reserve the assessment imposed, as it alleges, upon the reserve fund.

Whether or not the stocks of corporations of foreign states are exempt from taxation will depend upon the construction to be put upon the Tax act of 1903. *Pamph. L., p.* 394. The Tax act of 1866 provided "that all real and personal estate within this state, whether owned by individuals or by corporations, shall be liable to taxation," and then exempted from taxation "stocks and other personal estate owned by citizens of this state situate and being out of this state upon which taxes shall have been actually assessed and paid within

twelve months next before the date prescribed by law for commencing the assessment." *Pamph. L., p.* 1079, § 5. This act continued on the statute book until the revision of 1903, which exempts "the *personal property* owned by citizens or corporations of this state situate and being out of the state upon which taxes shall have been actually assessed and paid within twelve months."

There are some changes in verbiage made by the act of 1903. In the second section it provides for taxation of "all property, real and personal, within the jurisdiction of this state not *expressly exempted* by this act or excluded from its operation." The act of 1866 exempted from taxation "*stocks* and other personal estate." The act of 1903 exempts the "*personal property,*" and the question arises whether these verbal alterations worked a change in the law. The act of 1903 is a revision. The act of 1866 had been construed by the courts and had been acted upon by the bar and the tax officials as exempting the stock in foreign corporations owned by residents of this state when the corporations had paid taxes on their property in their own states. *Smith* v. *Ramsey,* 25 *Vroom* 546; *De Baun* v. *Smith,* 26 *Id.* 110.

It is perfectly well settled in this state that a clear intention to change the existing system of law must be manifested when a revision and re-enactment of the body of statutory law takes place. *State* v. *Anderson,* 11 *Vroom* 224.

In the case in hand the exempting section contains the exact words of the previous statute save that the words "personal property" are substituted for the words "stocks and other personal estate" in the older act. They are equivalent, for personal property embraces stocks and other personal estate.

It is agreed in this case that the foreign corporations, the stock in which the defendant holds, paid taxes which had been assessed upon their real and personal property in their respective states within twelve months before May 20th, 1906. Is the payment of taxes upon the property of the corporations a payment upon the stock to bring such stocks within the exemption provided for in the act of 1903? A tax levied upon

the stock of a corporation and a tax assessed against the property thereof was held in *State* v. *Branin,* 3 *Zab.* 500, to be a tax levied twice upon the same thing, for "the stock is the representative of the property, the certificate of stock being only evidence of title to the property, and worthless except as such evidence; and a tax upon the stock is in fact a tax upon the property it represents." This deliverance was made before the enactment of the Tax act of 1866, and the legislature passed that act having in view the adjudication of the Supreme Court upon that subject, so that when it enacted that stock of foreign corporations should be exempt from taxation "upon which taxes shall have been actually assessed and paid," it must be held to have meant taxes paid upon the property which the stock represented. Our later cases, *Smith* v. *Ramsey,* 25 *Vroom* 546, and *De Baun* v. *Smith,* 26 *Id.* 110, have so held. It is objected, however, that we are not at liberty to imply an exemption in construing the act of 1903, because of the words introduced into the revision making all property taxable "not expressly exempted by this act or excluded from its operation," and that the revision did change the law. This language, however, is deemed to be the fair equivalent of the act of 1866, which provided for the taxation of "all real and personal estate," and defined that the term "personal estate" should be construed to include "stocks in corporations whether said personal estate be within or without this state." The revision in the special exempting sections has simply substituted the words "personal property" for the words "stocks and other personal estate." The wording of the remainder of the section in each of the acts is identical. The language in each act is peculiarly applicable to stocks in foreign corporations. The later act being a revision naturally is more concise, but condensation accomplished by the use of a single phrase legally and naturally embracing several previously specially enumerated objects, cannot be said clearly to specify an intention to change a preexisting system. The added words in section 2 of the revision, "or excluded from its operation," must also be dealt with. They cannot apply to railroads and canals, for these are

among the special exemptions. May they not be reasonably construed to apply to property before the revision excluded by construction from the former act? Whether this view be tenable or not the words must be given some effect and show an intention that exemption in express words of enumeration was not intended by the revisers in all cases to be necessary in order to exclude property from the operation of the act.

In *Jersey City Gas Light Co.* v. *Jersey City,* 17 *Vroom* 194, it was said concerning exemptions of a similar character: "Though the provision of the act of 1866, that the stockholders shall not be taxed for the stock, has been characterized as an exemption, it is not such in any sense. It is merely a declaration of the intention of the legislature that the property of the corporation, being taxable in the hands of the company, shall not be again taxable in the hands of the stockholders. A provision so manifestly just will not be held to be repealed unless the intention to repeal it is clearly apparent." It seems clear that before the revision of 1903 a public policy as indicated by the above quotation, obtained in this state, and as was said by the Supreme Court in this case, "our legislature evidently thought it unjust that the property of the corporation should be taxed and the certificates of stock representing the shares of the individual stockholders therein should be taxed also." The revision of 1903 was enacted with this policy against what, in effect, is an unjust double taxation, definitely settled by the decisions of our courts.

Stocks of foreign corporations owned here, and admittedly personal property within the jurisdiction of this state, upon the property of which located in foreign states taxes have been paid within the time prescribed by the act, are exempted from taxation under section 3, subdivision 1 of the General Tax act of 1903.

The judgment of the Supreme Court, therefore, so far as the writ of error prosecuted by the city is concerned, must be affirmed.

The insurance company seeks to reverse the judgment on the ground that it has been taxed upon its reinsurance reserve

fund. The Supreme Court held "there is nothing to show that the reinsurance reserve was invested in taxable securities * * * and it * * * must be assumed, in the absence of evidence to the contrary, that it * * * was actually invested in the other securities which were deducted and not assessed."

| | |
|---|---|
| If from the gross assets of the company..... | $653,760.81 |
| we deduct the reserve (treating it as a liability), | 246,903.05 |

| | |
|---|---|
| the balance ............................... | $406,857.76 |

would be the capital and accumulated surplus for the purposes of taxation before any exemption.

The exemptions actually allowed were:

| | |
|---|---|
| Bonds ..................... | $307,915.00 |
| Real estate mtges........... | 67,450.00 |
| Stocks of foreign corps....... | 183,921.00 |

Total exemptions ........... $559,286.00    It will thus be seen that the exemptions would exceed the capital and surplus by more than $150,000. It is manifest that nearly two-thirds of the reserve fund were actually invested in exempt securities. The company, which is possessed of knowledge as to what securities have been set aside to represent this fund, has refrained from disclosing whether the other one-third of the exempt securities has not been so appropriated and has preserved silence in that regard, and so it is not certain that this fund is not composed entirely of non-taxable securities.

Passing, however, to the merits of the company's contention, it is perceived that the eighteenth section of the act of 1903 provides that "every fire insurance company * * * shall be assessed * * * upon the full amount of its capital stock paid in and accumulated surplus; the real estate belonging to every such corporation, however, shall be taxed in the taxing district where said real estate is situate, and the amount of assessment upon such real estate shall be deducted from the amount of any assessment made upon the capital stock and accumulated surplus." *Tax act of* 1903, § 18.

The case shows that the reinsurance reserve is a fund composed of the portions of the gross premiums of policies in force which have not been earned by the company. It is insisted that its maintenance is made obligatory by the fifty-sixth section of the Insurance law (*Pamph. L.* 1902, *p.* 407) by providing that when the insurance department finds that the assets of a stock insurance company, "after charging it with an amount requisite for the reinsurance of all its outstanding risks and with its other liabilities, including capital stock, up to the minimum amount required by this act, amount to less than such minimum amount of capital stock," such company may be enjoined and a receiver appointed.

For the purpose of this case, it may be assumed that this statute has the effect claimed for it. The principal purpose of the fund is to enable a company to rid itself of liability for further possible claims in the event that continued excessive losses may threaten to wipe out its surplus accumulations and impair its capital below the statutory minimum or to an extent that might endanger the security of the "unburned" policyholders, the capital and surplus being the only funds out of which losses can be met. In such a case the company, by paying back to the holders of policies unearned portions of their premiums for the unexpired terms of the policies, or by paying the same over to another company for assuming the risks, would be relieved of its obligations under its contracts of insurance. This description is more applicable to an asset of the company, set apart on its books to an amount equal to the cancellation value of its policies, than it is to define a liability or debt. The fund is in the possession and control of the company, is invested by it in interest-bearing securities, and the profits yielded are substantial and inure to the corporation. It seems not to be held on any trust, nor is it chargeable with any liability other than that with which the capital and surplus are charged. It is a part of the surplus reserved from dividends. It may never be called upon to provide for the reinsurance of the company's risks or pay losses.

To ascertain the capital and accumulated surplus, it is necessary to find the true value of the gross assets and from

such value deduct the debts and liabilities. The remainder
will be the value of the capital and of the surplus, if any.
The question arises, then, should the reserve fund be counted
as a liability? In the case of *People's Fire Insurance Co.* v.
*Parker, Receiver, 5 Vroom* 479; *affirmed, 6 Id.* 575, it was
held by this court that the term "accumulated surplus" in its
application to stock companies is well understood to refer to
the fund they have in excess of their capital and liabilities, and
that the word "liabilities" there used means fixed liabilities,
not contingent, citing *State* v. *Utter, 5 Id.* 493. An assess-
ment levied against the unearned premiums as a part of the
accumulated surplus of the company was in that case affirmed.
The liabilities and losses upon policies issued and unexpired is
not a fixed and definite liability, but merely contingent, and
that as such it should not be deducted from the gross assets
in order to ascertain the capital stock and accumulated surplus.

The company seeks to distinguish the facts in the present
case from those in that above cited, by insisting that, by the
laws now in force, the company is compelled to maintain this
fund, while when the above case of People's Fire Insurance
Co. *v.* Parker, Receiver, was decided, the setting aside of the
fund was a mere voluntary act on the part of the company,
and that what was once a mere fund from which to return a
portion of the premium to an insurer, has now become a fixed
and definite fund required to be set aside and put beyond the
control of every company by the commissioner of insurance.
It is not perceived how the compulsory maintenance of this
fund alters its character. Capital stock must be kept intact
and is also liable for the debts of the company. Assuming
that its maintenance is prescribed by law, the liabilities to
losses upon policies issued and unexpired for which it is set
aside are not by that fact changed or made different from
those described in the People's Fire Insurance case. The
*status* of these liabilities as to whether they were contingent
or fixed was the point considered in that case as determining
the exemption or taxation of the fund. See *Kenton Insurance
Co.* v. *City of Covington, 86 Ky.* 213.

Under the authority of People's Fire Insurance Co. *v*. Parker, Receiver, therefore, the judgment of the Supreme Court upon the writ of error sued out by the company must likewise be affirmed.

Vote in Inhabitants of the City of Trenton, plaintiff in error, *v*. Standard Fire Insurance Co., defendant in error:

*For affirmance*—THE CHIEF JUSTICE, GARRISON, REED, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, GRAY, DILL, CONGDON, J.J.   12.

*For reversal*—THE CHANCELLOR, VROOM, J.   2.

Vote in Inhabitants of the City of Trenton, defendant in error, *v*. Standard Fire Insurance Co., plaintiff in error:

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, REED, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON, J.J.   14.

*For reversal*—None.