## Commonwealth Life Insurance Company v. The City of Louisville.
## Commouwealth Life Insurance Company v. The Commonwealth of Kentucky.

(Decided November 9, 1911.)

Appeals from Jefferson Circuit Court.
(Chancery Branch, First Division.)

Insurance Companies—Taxation of Securities Deposited With the State Treasurer.—The securities that a life insurance company is required by sections 648 and 648a, of the Kentucky Statutes to keep on deposit with the State Treasurer for the benefit and protection of its policy-holders, is property owned by the insurance company and subject to taxation against it.

BURNETT, BATSON & CARY for appellant.

JOSEPH S. LAWTON, CLAYTON B. BLAKEY, M. J. HOLT for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

These two appeals involve the same questions of law, were heard together and will be disposed of in one opinion.

The question is—Can a domestic life insurance company be required to pay taxes upon securities or choses in action that it is required by law to deposit with the State Treasurer?

Section 648 of the Kentucky Statutes provides that:

"Every domestic life insurance company shall deposit with the Treasurer of the State, who shall receive the same in his official capacity, any of the bonds or securities in which, by law, it is authorized to invest its capital and accumulations, to an amount not less than one hundred thousand dollars, to be held by the said Treasurer for the benefit of the policy holders of the company making such deposit."

Other provisions in the section require the company to maintain the value of the securities so deposited at one hundred thousand dollars, and allows the Treasurer to permit the company to collect the interest or dividends on the security so deposited, and to withdraw securities upon depositing others in their stead. This section became a law in 1893. In 1906 the legislature enacted a

law relating to the deposit of funds of domestic life insurance companies with the State Treasurer, which is now section 648a of the Kentucky Statutes.   This act reads in part—

"Within ninety days after the net cash value of each policy in force shall be ascertained, as now required by law, there shall be deposited with the State Treasurer, by every domestic life insurance company, for the security and benefit of all its policy holders, an amount which, together with such sums as may be deposited by said company with other States and Governments, by the requirements of the laws thereof, shall not be less than the amount of such ascertained valuation of all policies in force.

"But no company shall be required to make the deposit herein required until the net cash value of the policies in force exceeds the amount deposited by said company, under section six hundred and forty-eight of the Kentucky Statutes, and then only to the extent of such excess."

Other sections of this act of 1906 designate the character of securities that shall be deposited with the State Treasurer, and give the company making the deposit the right to withdraw securities and substitute others of like value, and to collect the interest and dividends upon the securities.   It also provides that—

"Whenever the net cash value of the policies outstanding and in force against any company is less than the amount of securities then on deposit with the treasurer, such company shall have the right to withdraw such excess; but at least one hundred thousand dollars in securities, at their par and market value, shall remain on deposit."

Section 653 of the Kentucky Statutes, provides that:

"When the actual funds of any life insurance company doing business in this Commonwealth are not of a net cash value equal to its liabilities, counting as such the net value of its policies, which shall be until the twenty-first day of December, 1895, valued according to the "American Experience" table rate of mortality, with interest at four and one-half per centum per annum, and on and after that day shall be valued according to the "combined experience" or "actuaries" table rate of mortality, with interest at 4 per centum per annum, it shall be the duty of the Insurance Commissioner to give notice to such company and its agents to discontinue

issuing new policies within this Commonwealth until such time as its funds have become equal to its liabilities, valuing its policies as aforesaid."    *    *    *

In section 650 it is provided that the treasurer shall deliver the securities so held to the company, when he is satisfied in the manner pointed out in the statute that all of its debts and liabilities due or that may become due upon any contract or agreement issued or made by it have been paid.

The purpose of this legislation was to require life insurance companies to provide, maintain and keep a fund that in connection with deposits required by other States and governments would be at all times sufficient to pay the net cash value of all policies in force. The insurance company contends that the securities in question are not owned beneficially or actually by the company, but are deposited as required by law with the State Treasurer who holds them as trustee for the benefit and protection of the policy-holders of the company, and that in fact they are owned by the policy-holders and not the company; and, this being so, the company should not be required to pay tax on them. On the other hand the contention of the taying authorities is that these securities deposited with the State Treasurer are the property of the company and, therefore, subject to assessment and taxation against it.

The question presented, although an important one, is a very simple one, depending entirely upon who owns these securities. All of the funds that a life insurance company owns, with the exception of its capital stock that is paid by its stockholders, is contributed by its policy-holders, and in consideration of these contributions which are paid in the form of premiums, the company obligates itself to perform the contract entered into when the policy is issued by paying to the beneficiaries therein named the sum stipulated in the policy. Except for the statute in question, the company would have and keep the actual and physical possession of all the funds it collected, and would have the right to control and dispose of them to the same extent that it would have the right to control and dispose of any other property owned by it. But the Legislature deemed it proper for the better protection of policy-holders to secure as safely as could be done a certain amount of these funds, and, therefore, instead of permitting the company to keep all of its funds and securities in its own physical possession,

it required that a certain amount should be deposited with the State Treasurer. It is true these securities are deposited with the State Treasurer for a specific purpose, and the authority of the company over them is limited, but, nevertheless in the ordinary and safe conduct of the business of the company they are for all practical purposes owned and controlled by it. It collects the interest on them, may withdraw such as it desires and deposits others of equal value in place of those withdrawn, and after its debts and liabilities are satisfied in full, it may withdraw all of them and do with them the same as it may do with its other property. We think, therefore, that, except for the mere circumstance that these securities are required to be deposited in the vaults of the State Treasurer in place of the private vaults of the company, they are the same as other property of the company. They are not deposited with the State Treasurer to the credit of any particular policy-holder, nor has any particular policy-holder any claim to any of them above that of all other policy-holders. When the company comes to pay a policy or give the policy-holder the net cash value of his policy, it does not necessarily raise the sum to be paid from the securities deposited with the State Treasurer. In the ordinary course of its business, it satisfies the policy-holder out of other funds in its possession. The treasurer has no control over these securities except to see that the company complies with the law relating to them. He merely acts as the legal custodian, holding the securities as the property of the company for the protection of its policy-holders. The situation is precisely the same as if the company agreed in the contract with every policy-holder that it would deposit and keep in the custody of some third person a fund sufficient at all times to pay the cash surrender value of his policy, and there is really little practical difference between the condition presented and one that would arise if funds or property were placed in the hands of a bailee to be held for a specific purpose. The argument is strongly pressed that if the company is required to pay taxes on these securities, that it cannot at the prevailing rate of interest meet the demands of the tax gatherer, and at the same time keep on hand the amount of securities required by law. But this argument is altogether fallacious. It necessarily proceeds upon the theory that the company must pay the taxes out

of the earnings or income of the securities on deposit, when this is not at all the fact. It can pay the tax out of its other securities, or out of the income derived from its other securities, or out of any other property that it owns. There are many persons who own property subject to taxation from which they do not derive sufficient income to pay the tax charged against it, and yet no one would seriously contend that such property should be exempt from taxation. So far as the State in the collection of its taxes is concerned, the fund from which the tax is raised is not a subject of inquiry. The State has no interest in the particular class or species of property from which the taxes gathered by it are derived. It demands that every owner of property shall pay a certain rate of taxation upon the property. Where the owner gets the money from to pay the taxes is a matter entirely with him.

The argument is further made that as these securities are deposited and held for the protection of the policyholder and set apart for his particular use and benefit, the tax, if any, paid on them should be paid by the policy-holder. But this argument is altogether lacking in merit. It might with as much propriety be said that as all of the property of a life insurance company is primarily liable for the payment of its policies and charged with their payment and must be applied to this purpose and cannot be used for or diverted to any other, therefore the company should not pay any tax at all. The securities on deposit with the State Treasurer are not liable for the debts of the company to a greater extent than is any other property owned by it. So far as its liabilities are concerned, all of its property occupies the same position—it is all charged with the payment of liabilities. The only difference being that the law permits the company to keep in its own physical possession certain of its property and requires that certain other shall be deposited with an agent of the State.

It is also insisted that the insurance company occupies toward these securities the same relation as a bank does toward its deposits, and, therefore, they should be exempt from taxation by the company for the same reasons that have been assigned for exempting banks from the payment of taxes upon deposits. But there is a plain distinction between deposits in a bank and the deposits of these securities with the State Treasurer. When a deposit is made in a bank it becomes the prop-

erty of the bank, and the relation of debtor and creditor is created, but the depositor has the right at any time to demand that the particular amount deposited by him shall be returned. He has in fact a valid collectible demand against the bank for the amount of his deposit. If it is a general deposit, he is not entitled to have returned to him the identical money he deposited, but he is at all times entitled to have returned the precise amount that he deposited. He knows exactly at all times how much he has on deposit, and how much he is entitled to collect. Indeed, for all practical business purposes the deposit remains the property of the depositor. The bank merely holds it for him until payment is demanded; and, so it has been held that the depositor, who is the real and beneficial owner of the deposit, and not the bank should pay the tax on the deposit. Commonwealth v. Bank of Commerce, 118 Ky., 547. But the attitude of an insurance company towards the securities placed by it with the State Treasurer is very different from the attitude occupied by the bank towards its depositors. The securities on deposit with the State Treasurer before they are deposited belong absolutely to the insurance company, subject of course to the payment of its debts. They continue to be its property, subject to the payment of its debts. At no period has the policy-holder any interest in these securities, except to the extent that they may be necessary to satisfy the conditions of his policy. At no time can the policy-holder demand that any of these securities shall be turned over to him, or sold for his benefit, unless it should be that the company was in process of liquidation. In the case of a bank, the money before it is deposited in the bank belongs to the depositor. When he deposits it in the bank, it yet remains his property, in the sense that he can compel the bank to pay him the amount of his deposit. And so the depositor must pay the tax. In the case of an insurance company, the securities deposited are its property. It has the right to use them for any purpose it pleases, subject to the lien of its policy-holders; and being its property, it must pay the tax on them.

The views we have announced are supported by the following authorities: Kenton Ins. Co. v. City of Covington, 86 Ky., 213; Inhabitants of Trenton v. Standard Fire Ins. Co., 73 Atl., 606; The Republic Life Ins. Co. v. Joseph Pollak, 75 Ill., 292; Kansas Mutual Life Ass'n v. Hill, 51 Kan., 636; Provident Life & Trust Co.

v. Durham, 212 Pa. St., 68; The case of Scottish Union & National Ass'n v. Bowland, 196 U. S., 611, 49 L. Ed., 619, cited by counsel for appellees is not in point, nor is the case of the Board of Assessors, &c. v. New York Life Ins. Co., 216 U. S., 517, 54 L. Ed., 597, cited by counsel for appellant.

The judgment of the lower court holding the securities subject to taxation is affirmed.

Judge Lassing not sitting.