**In re OKLAHOMA NAT. LIFE INS. CO.**

No. 7962—Opinion Filed Feb. 12, 1918.

Rehearing Denied June 11, 1918.

(173 Pac. 376.)

(Syllabus.)

1. **Taxation—Property of Domestic Life Insurance Company—Reserve—Statute.**

The property and securities in which the reserve of a domestic life insurance company, computed and carried as required by law, is invested, are for the purpose of taxation the property of the insurance company.

2. **"Taxation — Property of Corporation — Moneyed Capital, Surplus, and Undivided Profits"—Statutes.**

An assessment for taxation, by name, on the moneyed capital, surplus, and undivided profits of a corporation, is an assessment upon its property and assets. The term "moneyed capital, surplus, and undivided profits," as used in section 7318, Rev. Laws 1910, as amended by section 4, art. 1, c. 240, Session Laws 1913, p. 632, providing that certain corporations "shall be assessed upon the net value of their moneyed capital, surplus and undivided profits," construed with statutes in pari materia, includes all the assets, money and property, belonging to or owned by the corporation.

3. **Same.**

The amount of the authorized capital subscribed and paid in by the shareholders, outstanding bonded indebtedness, debentures, surplus, and undivided profits, or the total amount invested in the business, is not the presumptive value of the "moneyed capital, surplus and undivided profits," for the purpose of the assessment under section 7318, Rev. Laws 1910. But the actual value of the capital, surplus, and undivided profits must be determined by considering the money on hand and the fair cash value. estimated at the price it would bring at a fair voluntary sale, of all the property and assets of whatever kind subject to taxation.

4. **Taxation — Exemption — Mortgages — Constitutional Provisions.**

Section 2, c. 246, Session Laws 1913, p. 684, providing that all mortgages of real property situated in this state which are taxed by that act, and the debts and obligations which they secure, shall be exempt from ad valorem and all other taxation, the act substituting in lieu thereof a graduated registration tax on the mortgage, and the mortgaged real property being subject to ad valorem taxation at its full value, is not an exemption of property from taxation as prohibited by article 5, § 50 (Williams, § 140) of the Constitution.

5. **Taxation — Ad Valorem Tax—Constitutional Provisions.**

Article 10, § 8 (Williams, § 273) of the Constitution does not require that all property shall be taxed ad valorem, but only that property shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale, when it is taxed ad valorem.

6. **Taxation — Property of Corporation — Moneyed Capital — Mortgages — Deductions.**

The value of mortgages of real property and the debts and obligations which they secure, owned and held by a corporation, subject to and upon which the mortgage registration tax has been paid, should not be included in the computation of the value of the moneyed capital, surplus, and undivided profits of the corporation for assessment for ad valorem taxation.

7. **Same—Deductions for Debts—"Net Value of Their Moneyed Capital, Surplus, and Undivided Profits."**

Under the laws of this state, no deduction is authorized on account of liabilities or indebtedness of the owner, in computing the assessment for taxation of the property of either individuals or corporations. By the term "net value of their moneyed capital, surplus and undivided profits," for the purpose of assessment of corporations under section 7318, Rev. Laws 1910, as amended, construed in connection with other statutes, is not meant the value clear of, or free from, deductions on account of the debts and liabilities of the corporation, but clear of, or free from, deductions on account of the assessed value of real estate listed separately, and any others authorized by law.

8. **Same—Domestic Life Insurance Company—Value of Property—Deductions.**

No deduction should be made from the value of the property and assets of a domestic life insurance company in computing the assessment under section 7318, Rev. Laws 1910, as amended, for liabilities to policy holders on account of the reserve.

9. **Same.**

Where a domestic life insurance company on January 1, 1915, with a paid-up capital of $200,000, surplus of $133,211.66 and reserve on policies of $335,298.47, has total assets in the state, the fair cash value of which equal the aggregate of the paid-up capital, surplus, and reserve, but including loans secured by mortgages on real estate subjec t to and on which the mortgage registration tax has been paid of the value of $325,653.50, and where the assessed value of the real estate owned by it in this state and listed separately is $6,750, held, that the assessment on the net value of its moneyed capital, surplus, and undivided profits for that year should be $336,706.63.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

From an order and judgment of the district court determining that the net value of the moneyed capital, surplus, and undivided

profits, less the assessed value of real estate separately listed, of the Oklahoma National Life Insurance Company on January 1, 1915, subject to an ad valorem tax was a certain sum, and that the assessment by the county board of equalization be reduced to that sum, an appeal was prosecuted on behalf of the state. Reversed and cause remanded, with directions.

John Embry, Co. Atty., and Paul Van Winkle, Asst. Co. Atty., for appellants.

Ledbetter, Stuart & Bell, for appellee.

S. P. Freeling, Atty. Gen., and Hunter L. Johnson, Asst. Atty. Gen., amici curiae.

MILEY, J. From an order and judgment of the court below determining that the net value of the moneyed capital, surplus, and undivided profits, less the assessed value of real estate listed separately, of the Oklahoma National Life Insurance Company, as it existed on the 1st day of January, 1915, subject to ad valorem taxation, was the sum of $1,408.16, and that the assessment made by the county board of equalization be reduced to that sum, an appeal is prosecuted on behalf of the state.

The appellee is a domestic life insurance company located in Oklahoma county and doing business in this state for profit. On January 1, 1915, the corporation had a paid-up capital of $200,000, and an admitted surplus of $133,211.66. and carried a reserve on all policies amounting to $335,298.47. On that date, the company had on hand in cash and deposited in banks the sum of $79,106.01, and besides, owned assets consisting of real estate, policy loans, loans secured by mortgages on real estate, and other items, in which its capital, surplus, and reserve had been invested, the fair cash value of which, together with cash on hand and deposited in banks, exceeded the aggregate amount of its paid-up capital, surplus, and reserve. Of its loans secured by mortgages on real estate, loans to the value of $325,053.50 were secured by mortgages on real estate situated in this state, on which the registration tax imposed by chapter 246, Session Laws 1913, p. 684, had been paid and which the company claims is not subject to ad valorem taxation, as provided in section 2 of that act. The assessed value of the real estate owned by it and listed separately in its name was $6,750. Evidently the court below, in arriving at the amount of the assessment, entirely disregarded the value of the property and assets of the corporation, amounting to more than $700,000, and arrived at the same by taking the sum of the paid-up capital of

$200,000, the surplus of $133,211.66, and deducting therefrom the value of all mortgages claimed to be exempt from ad valorem taxation, and the assessed value of the real estate listed separately, which left only $1,408.-16. The same result is reached in this case if from the total value of all the assets of the company there is deducted the assessed value of the real estate listed separately, all of the liabilities of the company, including the reserve which the company claims represented its liabilities to its policy holders on their policies, and the value of the mortgage loans exempted from ad valorem taxation.

The statutes applicable to the assessment of the property of corporations, other than real estate, for ad valorem taxation in force at the time, necessary to notice, were section 7302, Rev. Laws 1910; section 7307, Rev. Laws 1910, as amended by section 2, art. 1, c. 240, Session Laws 1913, p. 631; section 7318, Rev. Laws 1910, as amended by section 4, art. 1, c. 240, Session Laws 1913, p. 632; and section 7331, Rev. Laws 1910. While portions of chapter 240. Session Laws 1913, are void under article 5, § 33 (Williams, § 95) of the Constitution, the act having been passed during the last five days of the session of the Legislature, it has been held by this court that the separable provisions of the act which do not raise revenue are not void for that reason. Lusk et al. v. Ryan, County Treas., 69 Oklahoma, 171 Pac. 323. For the reason stated in that decision, sections 2 and 4 of article 1 of the act are valid, and sections 7307 and 7318, as so amended, were in force and effect at the date of the assessment under consideration.

Section 7302 is as follows:

"All property in this state, whether real or personal, including the property of corporations, banks and bankers, except such as is exempt, shall be subject to taxation."

Section 7307, as amended by chapter 240, Session Laws 1913, so far as pertinent, reads:

"All taxable property, real or personal, shall be listed and assessed each year at its fair cash value, estimated at the price it would bring at a fair voluntary sale, in the name of the owner thereof on the first day of January of each year, as soon as practicable on or after the fifteenth day of January, including all property owned on the first day of January of that year. * * *"

Section 7318, as amended by section 4, art. 1, c. 240, Session Laws 1913, p. 632, so far as applicable to this corporation, provides:

"All corporations organized, existing or doing business in this state, for profit, other than public service corporations assessed by the state board of equalization. * * *

shall be assessed upon the net value of their moneyed capital, surplus, and undivided profits, as the same existed on the first day of January of each year, in the county, town, district or city, where such corporation is located, less the assessed valuation of any real estate located in this state owned by such corporation and listed separately in the name of such corporations. 'Moneyed capital,' as used in this section, shall include money actually invested in the business of such corporation, whether represented by certificates of stock, debentures, or bonds."

Then follow provisions applicable to the taxation of shares of stock in banking corporations.

Section 7331 reads:

"It shall be the duty of the managing officers of every corporation to make, under oath, and deliver to the assessor, on forms prescribed by the state auditor, a statement of its authorized capital stock and the amount of capital paid up thereon, the amount of its outstanding bonded indebtedness, if any, the names of its shareholders as the same appears of record upon the books of the corporation, and the number of shares held by each, and the description and value of each tract or parcel of land owned by such corporation, and description of all other property owned by such corporation, and the value thereof, the total amount of its invested capital, the total amount of surplus and undivided profits. The assessor shall return the sworn statement so made, with his assessment, to the board of equalization of the city, town or township wherein said corporation is located, and if it shall appear that the statement so made does not fully return all the property and assets of such corporation, or is untrue in any particular, said board of equalization shall have power, and it shall be their duty to examine the books, records and files of such corporation and to make up a true and correct return of the money, capital, surplus, undivided profits of such corporation subject to taxation, and as a penalty, shall add fifty per cent. of the actual value thereof so ascertained."

On behalf of the state, it was contended in the court below that the assessment should be $661,760.13, being the sum of the capital paid in, admitted surplus, and reserve (which in this case, is substantially equivalent to the fair cash value of all the property owned by the corporation, in which its capital, surplus, and reserve had been invested, in addition to money on hand and deposited in banks), less the assessed value of its real estate listed separately, but without any deduction for liabilities of the company to its policy holders on account of the reserve, or for the amount of mortgage loans subject to and on which the registration tax had been paid. By appropriate assignments

of error, the refusal of the court below to fix the assessment at that sum is presented to this court for review. On behalf of the appellee, it is urged that the assessment of $1,408.16 is correct, contending that only the paid-up capital and surplus is liable to assessment; that the reserve was neither capital nor surplus, but represented the accrued liability of the company on policies to policy holders; and that its assets to the amount of the reserve did not belong to it, but to the policy holders. While not objecting to the method of computing the value of the capital and surplus by taking into consideration the value of all its assets, the appellee insists, if that method of valuation is resorted to, that the liabilities and indebtedness of the company, including the amount of the reserve, must be deducted from the gross value of the assets in order to arrive at the "net value" of "the moneyed capital, surplus and undivided profis"; also that the value of the mortgage loans on which the registration tax had been made should be deducted.

It becomes important, at the outset, to determine the ownership of the assets of the company to the amount of the reserve. There was but little evidence taken on the subject, and that not wholly satisfactory. In addition to evidence as to the amount, practically all the evidence submitted on the subject is the statement of one of the officers of the company, more in the nature of a conclusion, that "all this reserve is indebtedness; the reserve on these policies is that part that belongs to the policy holders; it is that sum he is entitled to withdraw in cash, surrender his policy and get money, * * * that is, if he wants to cancel his policy."

The usual form of policy issued by life insurance companies provides for periodical payments of a fixed sum as premium; the amount being based on the age of the insured at the time the policy is issued, and is neither increased nor diminished with the advancing years of the insured. It is an established fact that in a class of persons of a given age the mortality is less in the earlier years than in the later. The premiums collected must be sufficient to pay all claims, so that as a result of collecting a fixed premium the amount collected from a given class during the earlier years is more than sufficient to pay the losses accurring during that period. To insure solvency then, it is necessary that a fund be accumulated from the excess of the premiums over the actual cost in the early years, which, together with future premiums as re-

ceived, but without regard to prospective or new business, will assure the payment of all claims as they fall due. This fund is called the reserve. By law, companies doing business in this state are compelled to maintain the same. It is one of the duties of the insurance commissioner of this state to ascertain if this is done. The amount necessary cannot be ascertained exactly, but various methods of estimating the same have been devised. These methods, among other things, assume that funds equal to the reserve will earn a certain rate of interest, and that deaths will occur according to a certain mortality table. The process of computing the reserve is known as valuing the policies. Section 3449, Rev. Laws 1910, requires the insurance commissioner to annually make calculations of all outstanding policies, additions thereto, unpaid dividends, and all other obligations of every life insurance company doing business in this state. That and other sections provide the methods by which the policies are to be valued. By section 3450, it is made the duty of the insurance commissioner to notify each company doing business in this state when its actual funds, exclusive of its capital, are not of a net cash value equal to its liabilities, including the net value of its policies, according to the basis and minimum standards prescribed or authorized by the laws of this state, and such company is required to thereupon discontinue issuing new policies until its funds are so sufficient. The reserve may then be said to be the portion of the premium set aside and accumulated, estimated to be necessary to meet the risk of the insurance when the premium payable is no longer sufficient of itself for that purpose. Since the liability of the company to pay the amount of the insurance in the event of the death of the insured terminates if the insured should fail to pay the premiums as agreed, the provision made for the future in respect to the insured whose policy is so terminated is no longer required. For this reason, companies of this state are required by section 3470, Rev. Laws 1910, to provide in their policies in substance:

"That in event of default in premium payments after premiums shall have been paid for three years, the insured shall be entitled to a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy and on dividend additions thereto, if any (the policy to specify the mortality table and rate of interest adopted for computing such reserve), less a specified percentage (not more than two and one-half) of the amount insured by the policy and of existing dividend additions thereto, if any, and less any existing indebtedness to the company on or secured by the policy: Provided, that the policy may be surrendered to the company at its home office within one month of date of default for a specified cash value at least equal to the sum which would otherwise be available for the purchase of insurance as aforesaid: Provided, further, that the company may defer payment for not more than six months after the application therefor is made. This provision shall not be required in term insurance of twenty years or less."

Whether the appellee makes such provision in all its policies, and whether it provides for the payment of the full reserve, or avails itself of the privilege of deducting all or a portion of the percentage permitted, does not appear from the record. Assuming that it does make provision in all its policies for the payment to the insured on termination of the policy of the full amount of the reserve, it does not follow that the witness for the company is correct in his conclusion that "the reserve on these policies is that part that belongs to the policy holders." The funds of an insurance company are derived from the contributions of its stockholders to the capital stock and surplus, earnings from investments, and premiums receipts. The entire premiums when paid become the property of the company to the same extent as do the contributions of the stockholders and its earnings from investments. While the investment of the funds of a domestic insurance company is regulated by law, the property and income therefrom in which its funds, from whatever source derived, are invested, belong to the company, and it has the right to control and dispose of the same. It is true that the funds of the company derived from premium reserves, and the property in which the same are invested, may be subjected to the payment of the claims of the policy holders when they accrue, including claims arising by reason of death as well as by withdrawal, but that is also true as to funds derived from other sources. The contributions of the stockholders and the earnings of the company, other than premiums, may as well be said to belong to the policy holders as that the assets to the extent of the reserve belong to them. So far from being the owner, it does not appear that the policy holders have a lien upon any particular part of the property or assets of the corporation, or that their right therein is different from that of other creditors. We therefore conclude that the portion of the assets of the corporation which represents the reserve is as much the property of the corporation as

that portion which represents the contributions of the stockholders, or funds derived from other sources.

The inquiry naturally follows, Is the reserve which is on hand in cash or invested in property subject to ad valorem taxation in the name of the corporation? Under the statute in force at the time for the assessment of property for ad valorem taxation, it appears that the only assessment, other than real estate, contemplated of the property of a corporation, except public service corporations assessed by the state board of equalization, is upon the net value of the moneyed capital, surplus, and undivided profits. Section 7318, supra.

In Webster's International Dictionary, "capital" is defined as "a stock of accumulated wealth." Another definition is, "The fund dedicated to a business to support its credit, to provide for contingencies, to suffer diminution from losses, and to derive accretions from gains and profits." For other definitions see 9 C. J. 1278. With respect to corporations, the term is sometimes used convertibly with "capital stock," and perhaps technically refers only to the means or property contributed by stockholders as the fund for the business for which the corporation was formed, but as used in statutes relating to taxation, drawn without regard to technical meaning of words, courts have given the term a broader meaning and have construed "capital stock" to mean all the actual property of the corporation. Cook on Corporations (7th Ed.) § 8; Henderson Bridge Co. v. Commonwealth, 99 Ky. 623, 31 S. W. 486, 29 L. R. A. 73; Commonwealth v. N. Y., P. & O. R. R. Co., 188 Pa. 169, 41 Atl. 594; O. & M. R. R. v. Weber, 96 Ill. 443; St. B. of Eq. v. People ex rel. Goggin, 191 Ill. 528, 61 N. E. 339, 58 L. R. A. 513, notes.

That the word "capital" was not used in section 7318 in the technical sense above referred to is apparent, because the statute expressly provides that "moneyed capital," as used in this section, shall include money actually invested in the business of such corporation, whether represented by certificate of stock, debentures, or bonds. We do not think that in accordance with the maxim, "Enumeratio unius est exclusio alterius," the statute should be construed as excluding money actually invested in the business which is not represented by certificates of stock, debentures, or bonds. The maxim is applied only as a means of discovering the legislative intent, and should never be employed to defeat the purpose of the Legislature otherwise ascertainable. The great fundamental rule in construing statutes is to ascertain and give effect to the intention of the Legislature. 36 Cyc. 1106. Section 7302, supra, plainly indicates the intention that all property of corporations except such as is exempt shall be taxed. Since, as before stated, other than upon real estate the only assessment of the property of a corporation is that under the name of "moneyed capital, surplus and undivided profits," taxable personal property not included within that assessment will escape taxation; therefore a construction of the term "capital" other than as including all the property and assets of the corporation would defeat the intention thus plainly expressed in section 7302. Furthermore, by the express terms of section 7331, supra, the managing officer of the corporation in the statement of the assessor, which is returned with his assessments, is required, in addition to stating the amount of capital paid upon the authorized capital stock, outstanding bonded indebtedness, surplus, undivided profits, and total invested capital, to state the description and value of each tract or parcel of land owned by such corporation, and description of all other property owned by such corporation, and the value thereof," and the corporation is penalized if it should "appear that the statement so made does not fully return all the property and assets of such corporation, or is untrue in any particular"; this affording the tax authorities the necessary data to assess all the personal, as well as real, property of the corporation subject to taxation.

It is clear to us that, construing section 7318 with statutes in pari materia, by the term "moneyed capital" the Legislature intended all the estate, whether in money or property owned by the corporation, and we so construe it. Nor do we think it was intended that the sum of the stock subscribed and paid in, the outstanding bonded indebtedness, debentures, surplus and undivided profits, or the total original amount invested in the business, were intended to be taken as the presumptive value of the entire property owned by the corporation for the purpose of the assessment. That such sum would be the equivalent of the value of all the property owned by the corporation is no doubt true as to some corporations, but as to others it would not. As to many corporations that sum would in fact exceed the value of the property; in others it would be less; and this is true as to corporations whose invested funds are derived only from the sources named, as well as those whose funds are derived from additional sources. For illustration, take a simple case of a

corporation with a subscribed and fully paid-up capital of $10,000. If the amount is invested in property of that fair .cash value, and there are no additions to its funds from other sources, so long as the value of the property remains at that sum the amount paid up would be the value of the capital, but if the property. should increase or decrease in value the value of the capital would likewise increase or decrease, and it would depend on the method in which the books are kept as to whether the increase or decrease in value would be disclosed in the statement of the amount of the paid-up capital and surplus. To take the amount of paid-up capital as the presumptive value might result in an unjust assessment either to the state or corporation, according to whether the property had increased or decrease in value. Therefore the statute provides for an assessment, not upon the amount of the capital, surplus, and undivided profits, or amount invested in its business, but upon the "net value" thereof, which, construed in connection with section 7307, supra, and article 10, § 8 (Williams, § 273) of the Constitution means the "fair cash value, estimated at the price it would bring at a fair voluntary sale," of all the property and assets of the corporation, less the assessed value of the real property listed separately and other deductions which may be allowed.

The statement of the amount of authorized capital and the amount paid thereon, of the outstanding bonded indebtedness, surplus, and undivided profits, and total amount of invested capital required by section 7331, was intended as an aid to the assessing officers in determining whether all the property had been returned and its value correctly stated. The property and assets in which the reserve is invested, being property and assets of the corporation, should be included in the valuation of the capital for purpose of assessment for taxation, as well as the property and assets . in which the contributions of the stockholders and the earnings of the company or money derived from other sources have been invested. All represent the stock of accumulated wealth of the company, and all of these funds are dedicated to the business to support its credit and to provide for contingencies. But of the property of this company loans to the value of $325,053.50 are secured by mortgages on real estate situated in this state, subject to and on which the registration tax imposed by chapter 246, Session Laws 1913, p. 684, has been paid, and the question arises whether the

value of these mortgage loans should be excluded in making the assessment. The act imposes a tax, denominated a registration tax, graduated according to the amount of the loan secured and the time elapsing before maturity thereof. Section 2 provides in part:

. "All mortgages of real property situated within this state which are taxed by this article, and the debts and obligations which they secure, together with the paper writings evincing the same, shall be exempt from ad valorem and all other taxation by the state, counties, towns, cities, villages, school districts and other local subdivisions of the state. * * *"

In Trustees,' Executors' & Securities' Ins. Corp., Ltd., v. Hooton, 53 Okla. 530, 157 Pac. 993, L. R. A. 1916E, 602, the legislation and its history and purpose were reviewed by this court, after which it was said:

"It is thus seen that the Legislature has itself denominated the tax a registration tax, and has imposed the same in lieu of ad valorem and all other taxes."

The constitutional power of the Legislature to impose the graduated registration tax was fully sustained in that case. In Cornelius v. State, 40 Okla. 733, 140 Pac. 1187, it was held that the act was not void because passed during the last five days of the session of the Legislature, but that a mortgage to the state to secure a loan of permanent school funds was not subject to the tax imposed under article 10, § 6 (Williams, § 271) of the Constitution, exempting all property of the state from taxation. The contention is now made by the tax authorities in this and other cases now pending in this court that the Legislature was without power to exempt mortgages and the debts and obligations which they secure from ad valorem taxation. The question now raised does not appear to have been considered and decided in cases above referred to. The contention now made is based upon article 5, § 50 (Williams, § 140) and article 10, § 8 (Williams, § 273) of the Constitution. The first-named section provides:    ,

"The Legislature shall pass no law exempting any property within this state from taxation, except as otherwise provided in this Constitution."

And the other section provides:

. "All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale; and any officer, or other person authorized to

assess values, or subjects, for taxation, who shall commit any willful error in the performance of his duty, shall be deemed guilty of malfeasance, and upon conviction thereof shall forfeit his office, and be otherwise punished as may be provided by law."

While many states have constitutional provisions requiring that property shall be taxed ad valorem, this state has none unless the section last quoted should be so construed. That such is not the meaning of that section is quite clear to us. It is simply a prohibition against undervaluation of property when it is taxed ad valorem, and is not a requirement that it shall be taxed by that method. Property may be valued as a means of measuring the amount of the tax thereon, but the tax may be measured by other means; for example, by the income from the property. Specific taxes may be imposed on property by the head, number, weight, or other measurement. It cannot be said that the Legislature has exempted any class of property from taxation, because it has not provided for its taxation by the ad valorem method, especially when, as in this case, another form of tax has been submitted therefor. That is settled in this state by the decision in Re Gross Production Tax of Wolverine Oil Co., 53 Okla. 24, 154 Pac. 362, L. R. A. 1916F, 141, in which it was held that an occupation tax on the business of producing oil, in lieu of any other taxes upon an ad valorem basis on the equipment and machinery in and around any well producing oil, is not an exemption from taxation as prohibited in section 50, art. 5, of the Constitution, but a substitution of one form of taxation for another upon the conditions named in the act.

The criticism of legislation substituting special taxes for ad valorem taxation of certain classes of property as unwise should be addressed to the Legislature. We cannot question the wisdom of the law, but only the power of the Legislature to enact it. In our opinion, section 2 of the act, supra, is valid; another form of tax having been substituted for the ad valorem method, and there being other provisions of the law taxing the land mortgaged at its full value. But it is urged that even if the exclusion of the mortgage and the obligation secured from ad valorem taxation is valid, corporations are not entitled to deduction of the value of such mortgages and obligations in making the assessment. The general rule, which seems to be supported by the overwhelming weight of authority, is that where the tax is upon the shares of stock

in the hands of the stockholders as their property, or is assessed against the corporation as agent of the shareholder, to be deducted from the dividends, as is provided in our statutes for the assessment of shares of stock in banks, no deduction should be made from the value of the shares on account of the capital or assets of the corporation invested in property which is exempt from taxation, or which is otherwise taxed. The authorities are collated in the notes to First Nat. Bank v. Board of Com., L. R. A. 1915C, 386. And where a franchise tax is laid upon a corporation measured by the amount of its capital stock, the manner in which the capital is invested is not material. 37 Cyc. 820. But where the tax, though by name on the capital, is really on the property or assets of the corporation, as is the tax under consideration, the value of property exempt from the tax and that otherwise assessed therefor is deducted or excluded. Home Savings Bank v. City of Des Moines, 205 U. S. 503, 27 Sup. Ct. 571, 51 L. Ed. 901; 37 Cyc. 1028. See, also, notes to State Board of Equalization v. People, 58 L. R. A. 513, and State of N. C. v. Morrison & Sons, L R. A. 1915C, 380. In Union Trust Co. v. Detroit, 170 Mich. 692, 137 N. W. 122, it was held that in ascertaining the value of the surplus and undivided profits of a corporation for purpose of taxation the amount invested in real estate mortgages should be deducted, where, as in this state, a specific tax has been paid on such mortgages imposed by statute declaring such property exempt from other taxes. In State v. Sellers & Orum Co., 151 Ala. 557, 44 South. 548, it was held that no deductions on account of mortgages on which a privilege tax had been paid should be made in the assessment of shares of capital stock of a corporation. But it appears in that case that the assessment was of shares of stock as property of the stockholders, and not of the capital as property of the corporation.

Having determined that while the assessment for taxation is by name on the net value of the moneyed capital, surplus, and undivided profits, it is really upon the property and assets of the corporation, and that the amount of the assessment is determined by ascertaining the fair cash value of such property and assets, it follows that in determining the amount the mortgages exempt from ad valorem taxation should not be included. From $661,760.13, conceded to be the value of all the assets of the corporation, including the mortgages, after deducting the assessed value of the real estate

listed separately, there should be deducted the value of the exempt mortgages, leaving $336,760.63 as the value of all the taxable personal property of the company subject to ad valorem taxation.

The appellee contends that it was liable to its policy holders on their policies on the 1st day of January, 1915, in the sum of $335,298.47, the aggregate net value of the policies and the amount of the reserve, and that to arrive at the "net value" of its moneyed capital and surplus this liability must be deducted from the fair cash value of its assets. It is true that in, determining the financial condition of the company under section 3450 the "net value of its policies according to the basis and minimum standards prescribed or authorized by laws of this state" is reckoned as a liability. In states permitting deduction of indebtedness of the owners in assessing his credits or other property for taxation, it is held that the insurance company is entitled to deduction of the amount of the reserve as being an indebtment of the company. See Gold Life Ins. Co. v. Lott, 54 Ala. 499; Equitable Life Ins. Co. v. Board of Equalization. 74 Iowa, 178. 37 N. W. 141; Michigan Mutual Life Ins. Co. v. Detroit Council, 133 Mich. 408, 95 N. W. 1131. But it is unnecessary for us to determine whether that sum represents a liability of the company. since we do not construe the statute as permitting any deduction from the value of the property owned on account of debts or liabilities. That such deductions are not permitted in the absence of a statute is well settled. And it has been held that statutes authorizing the same should be strictly construed. 37 Cyc. 1015. Appellee concedes that there is no statute authorizing the deduction in the assessment of property of individuals or partnerships, but only of corporations. The claim is made that this discrimination is permitted by article 10, § 22 (Williams, § 287) of the Constitution, which provides:

"Nothing in this Constitution shall be held, or construed, to prevent the classification of property for purposes of taxation; and the valuation of different classes by different means or methods."

Whether this is so, it is likewise unnecessary to determine. No statute is cited expressly authorizing the deduction of debts in the assessment of corporate property. The claim to the deduction is based solely on the construction of the term "net value," which it is insisted means the value of the property less debts and liabilities of the corporation. The lexical definition of "net" is clear of, or free from, all charges, deductions, etc. Webster's New International Dictionary. "Net" may mean, and often does, deduction of debts and liabilities, but not necessarily so. It is clear that it was not used in that sense in this statute. Certainly money actually invested in the business would not have been defined as including that represented by bonds and debentures had the intention been to authorize the deduction of indebtedness. Again, if it had been intended that there should be a deduction on this account, it seems that the provision would have been made in the statement provided in section 7331 as the basis for computing the assessment for the amount of the indebtedness and liabilities to be stated. The practical effect of construing the statute as contended for by appellee would be to exempt insolvent corporations from taxation, except on their real estate, notwithstanding such corporations may own thousands of dollars worth of other taxable property. From these considerations. it is clear to us that deductions of debts and liabilities were not intended. The deductions contemplated by the use of the term "net value" were, no doubt, the assessed value of the real estate listed separately, specified in the statute, and also any other property otherwise taxed, and property not subject to assessment for ad valorem taxation.

It is strenuously argued by appellee that to hold that its assets held by it to protect rights of its policy holders should be taxed as part of its capital, surplus, and undivided profits would be to hold that in determining the net value of the moneyed capital, surplus, and profits of a bank nothing should be deducted from its assets for its deposits. It is stated in the briefs that no bank ever has been assessed above the amount of its capital stock, surplus, and undivided profits. While banks are enumerated as corporations subject to assessment under the portion of section 7318, supra, national banks were not subject thereto. The only property of a national bank subject to tax is its real estate. While the shares of stock of the stockholders may be taxed as their property, no tax is permitted on the personal property of a national bank, or its capital stock considered as the property of the bank. 37 Cyc. 830. As to state banks, specific provision is made by the amendment to section 7318 for the assessment of the shares of stock considered as property of the individual stockholder, as is done and permitted of the shares of stock of national banks. While many au-

thorities hold that in addition to taxation of the shares of stock as property of the stockholders the capital, surplus, and undivided profits of a state bank may be taxed as property of the bank, it is doubtful whether that result was intended by the Legislature. But we are not concerned with the assessment of the property of a bank under the part of the section quoted at this time, and will consider the question when presented for decision. It may be remarked, however, that should it be assumed that state banks are subject to assessment under the portion of the statute we have been considering, and that the amount of their deposits should be deducted from the value of their total assets in determining the amount of the assessment, it would not follow that in determining the assessment of an insurance company deduction for the amount of the reserve would be proper. The distinction between the relation of a bank to its deposits and of a life insurance company toward its reserve, even when the amount of the reserve is represented by securities deposited with a governmental agency, is pointed out in Commonwealth Life Ins. Co. v. City of Louisville, 145 Ky. 284, 140 S. W. 306, 36 L. R. A. (N. S.) 226.

If we had reached the opposite conclusion to that herein announced, and had held that the assets of the corporation to the extent of the reserve were not the property of the corporation but of the policy holders, or that the company was entitled to a deduction of the amount of the reserve as a debt or liability, it is not probable that a substantially different result would have been reached in this case. Having held that the mortgages on which the registration tax was paid were not subject to taxation, the finding would not be authorized that the reserve was invested only in the taxable property, while practically all the capital and surplus was invested in nontaxable property and real estate, and this notwithstanding the testimony that the president was directed to invest the capital and surplus in mortgages exempt from ad valorem taxation. In the absence of evidence that the money actually invested in the nontaxable property and real estate was capital and surplus and not the reserve, it must be assumed that the reserve, to the extent of the value of such property, was invested therein. Trenton v. Standard Fire Ins. Co., 76 N. J. Law, 79, 68 Atl. 1111.

The judgment of the district court is reversed, and the cause remanded, with directions to render judgment fixing the amount of the assessment at $336,706.63.

All the Justices concur, except SHARP, C. J., and THACKER, J., absent, and not participating.