Protest of
NATIONAL MUTUAL CAS. CO.

NATIONAL MUTUAL CAS. CO. v.
BOARD OF EQUALIZATION
OF TULSA COUNTY.

No. 30866. June 8, 1943.

*138 P. 2d 538.*

Everett Petry and E. LeRoy Allen, both of Tulsa, for plaintiff in error.

Dixie Gilmer, County Atty., and William M. Taylor, Asst. County Atty., both of Tulsa, for defendant in error.

GIBSON, V. C. J. This proceeding originated before the equalization board of Tulsa county, where the plaintiff in error, National Mutual Casualty Company, filed its protest against the assessment of certain of its intangible personal property as fixed by the county assessor. The taxpayer was dissatisfied with the assessment as adjusted by the board, and appealed to the district court, where the order was affirmed.

The taxpayer now appeals from that judgment.

The property in question consisted of cash on hand, certain corporate stocks, and a number of alleged accounts receivable in the nature of insurance premiums said to be due the taxpayer from its policyholders.

The first contention is that all of said property, except so much of the aforesaid premiums as remained unearned, represented assets held as reserves pursuant to the requirement of the statutes relating to domestic insurance companies, and that such reserves are not subject to ad valorem or other property tax in the hands of the company. Section 12369, O. S. 1931 (rep. 1941, reenacted S. L. 1941, 68 O. S. 1941 § 15.13).

Under section 12369 corporations such as the present taxpayer were assessed for ad valorem taxation upon the value of their moneyed capital, surplus, and undivided profits as existing on January 1st of each year, less the assessed value of real estate, separately assessed, belonging to the corporation, and less other items as therein shown. However, that section, after the 1925 amendment thereof, contained the following provision:

"Moneyed capital or undivided profits, however, shall not include moneys held on deposits, in trust, or in reserve by any domestic insurance company doing business in this state, when such money held on deposit, in trust or in reserve, is so held by such domestic insurance company to comply with statutory requirements affecting such domestic insurance company."

The taxpayer says the reserves are set up under the law for the benefit of the policyholders, and that the Legislature in enacting the above provision recognized that fact and clearly intended that such reserves not be considered as property of the corporation in estimating the value of the assets aforesaid for purposes of assessment. Prior to the enactment of the above-quoted provision, says the taxpayer, this court had held that an insurance company was not entitled to deduct such reserves from

the gross value of its capital, etc., for purposes of taxation, and that the statute was amended in order to permit such deduction. In re Oklahoma Nat. Life Ins. Co., 68 Okla. 219, 173 P. 376.

It is urged in this respect that since the Legislature has definitely excluded reserves from the assets of domestic insurance companies as items in the hands of the company subject to ad valorem taxation, such reserves should not now be considered as intangible property of the company subject to the intangible property tax, which tax is also a direct property tax, levied in lieu of ad valorem. The reserves, it is said, were not subject to ad valorem tax and therefore they cannot be subject to a property tax which is levied in lieu of the ad valorem which did not exist.

The above contention seems well supported in principle. The briefs do not cite the statute requiring domestic insurance companies to set up reserves for the benefit and protection of policyholders, but the various sections are included in Title 36, O. S. 1941. However, with the exception of the premiums above mentioned that remained unearned, the state does not question the taxpayer's statement that the property in question constituted statutory reserves.

Counsel for the state say merely that the intangible property tax statute does not exempt these reserves from taxation; and that is true (68 O. S. 1941 §§ 1501-1520). The classes of property specifically exempted are defined in section 1503, and insurance company reserves are not mentioned. But the intangible property tax is an in lieu tax; it is in lieu of ad valorem. If the company was not subject to a personal ad valorem tax on such reserves, then the tax levied in lieu of ad valorem could not attach as against the company for the reason that no ad valorem tax ever attached to the property.

The judgment sustaining the assessment as fixed by the equalization board should be reversed insofar as the reserves are concerned.

It is contended that the insurance premiums assessed as accounts receivable were not actually accounts receivable; that they were merely bookkeeping items employed as a means of keeping accurate account of earned premiums from day to day or month to month; that they were premiums in process of collection, and that only the earned portion thereof on any given date constituted an enforceable obligation against the policyholder. The policyholder could not at any time be compelled to pay the premium in process of collection, but could be required to pay only the earned premium. Under a provision in the taxpayer's policies, inserted pursuant to 36 O. S. 1941 § 14, the policies were subject to cancellation at any time at the request of the insured or by the company on five days' notice, whereupon the unearned premium, if theretofore paid, was returnable to the policyholder. Therefore, no unearned premium could become an enforceable obligation. It could not be an account receivable, or other chose in action, within the meaning of the statute.

However, the evidence shows that no part of the items set up on the company's books as premiums had been earned up to January 1, 1941. For that reason said items could not constitute property of any kind subject to taxation on that date.

Since the statutory reserves aforesaid were assessed against the company and the bookkeeping items representing unearned premiums were not subject to assessment, the judgment of the trial court must be reversed and the case remanded, with directions to vacate the order of the equalization board.

It is so ordered.

CORN, C. J., and RILEY, OSBORN, BAYLESS, WELCH, HURST, and DAVISON, JJ., concur. ARNOLD, J., absent.