Ruth **GRAY** and **Robert Alan Tarr, Appellants,**

v.

Fred **HOLMAN, d/b/a Forrest Insurance Agency and Republic Underwriters Insurance Company, a foreign corporation, Appellees.**

No. 75215.

Supreme Court of Oklahoma.

Oct. 31, 1995.

---

Alan Agee, Brett Agee, James W. Carlton, Jr., Garvin, Agee, Carlton & Mashburn, Pauls Valley, for appellants.

Robert Trent Pipes, Danny K. Shadid, Shadid & Pipes, Oklahoma City, for appellees.

OPALA, Justice.

The issues presented on certiorari are: (1) Does Robert Alan Tarr [Tarr] have standing to press his claim for loss of property by fire against Republic Underwriters Insurance Company [Republic or insurer] and Fred Holman [Holman or agent]? (2) Was the theory of bad-faith refusal to settle an insurance claim preserved for corrective relief by Ruth Gray [Gray] and Tarr's [collectively insureds] appellate paperwork? (3) Did the case present controverted facts that are material to the insureds' claim for (a) Republic's bad-faith refusal to settle and (b) Holman's negligence in failing to procure the arranged-for indemnity coverage, which make the nisi prius *summary* judgment for Republic and Holman legally unsustainable? We answer all three questions in the affirmative.

## I

### THE ANATOMY OF LITIGATION

In April 1986 Ruth Gray—Tarr's mother—secured from Republic a standard fire insurance policy for certain premises in Ada. Gray claims that, while she did not hold legal title to this property, she paid the taxes on it, advanced money for its upgrade, had an oral agreement with her son for repayment of the funds which she had advanced for remodeling, and paid premiums upon the policy covering the premises. She considered the property to be *security for her son's reimbursement* of the expended funds.

Gray's fire insurance policy was purchased from Republic through its agent Holman. When Gray bought the policy, she allegedly informed Holman that the insured property's legal title stood in her son's name.[1] Holman, who—according to Gray—told her that it did not matter in whose name title was held, had the policy issued to her as the *only* insured.

On June 4, 1986 the insured property was destroyed by fire. Through Holman, Gray informed Republic of the fire loss on June 5, 1986. Her claim was denied on August 15, 1986 on the grounds that *legal title* to the insured premises *was not in her name, i.e.,*

---

1. Holman disputes that, *before* Gray presented the claim for fire loss, she ever advised him that

title to the insured property was in her son.

*she did not have an "insurable interest" in the property.* The record does *not* disclose whether, after declaring her policy "avoidable", Republic ever refunded any premiums Gray had paid.

In early 1987 Gray hired counsel to recover the fire loss. Upon (a) Republic's persistence that Gray *did not have an insurable interest* in the covered property and (b) its continued denial of the claim, Gray and Tarr sued both Holman and Republic on June 2, 1988—*more than one year,* but *less than two years,* after the fire. Gray and Tarr advanced a *contract* theory of liability against both the insurer and its agent. They also pressed a *tort* theory for Republic's alleged bad-faith refusal to pay the claim and for Holman's negligence in failing to procure the arranged-for indemnity policy. On December 14, 1989 the trial court summarily ruled for Holman[2] and Republic on the *contractual* theory of liability.[3] Gray's *tort* theories were summarily decided in favor of the insurer on February 16, 1990. The nisi prius summary disposition of Tarr's claim [on all theories of liability]—also in favor of Republic and Holman—was effected by its March 7, 1990 order.

The insureds timely appealed. The Court of Appeals' opinion affirmed the nisi prius summary judgment insofar as it is rested on the *contractual* theory of liability but reversed the ruling for Holman on the in-

sureds' *negligence* claim, held the insureds' claim for the insurer's bad-faith refusal to settle was not preserved for appellate review, and remanded the cause for trial of the insureds' negligence claim against Holman. The insurer and the insureds filed separate petitions for rehearing. One rehearing petition was denied on October 22, *1992* and the other on September 22, *1994.* This court granted Gray and Tarr's timely plea for certiorari on December 12, 1994.

## II

**IF GRAY IS FOUND TO HAVE BEEN TARR'S AGENT WHEN SHE PURCHASED FIRE COVERAGE FOR HIS PROPERTY, TARR—WHETHER A *DISCLOSED OR UNDISCLOSED* PRINCIPAL—CAN BRING AN ACTION IN TORT AGAINST THE INSURER TO REDRESS ANY INJURY TO *HIS* PROPERTY OR HARM TO *HIS* INTEREST FROM THE TRANSACTION BY GRAY AS *HIS* AGENT**

■■■ Resolution of Tarr's standing[4] to sue Republic and Holman requires a *factual inquiry* into whether Gray was Tarr's agent[5] or merely an officious volunteer.[6] If, in fact, Tarr *was* either Gray's *disclosed or undisclosed* principal and Gray *was* authorized to secure fire coverage for the premises on

---

**2.** The summary judgment in Holman's favor on the *contract* theory was doubtless rested on the familiar common-law principle that one who deals as agent in behalf of a *disclosed principal* is not liable for the latter's breach of contract. *See Underside v. Lathrop,* Okl., 645 P.2d 514, 517 (1982), for a discussion of the distinction between *ex contractu* and *ex delicto* theory of liability as it affects an agent's defenses to an action for negligence in failing to procure an arranged-for policy of insurance.

**3.** While *originally* Gray and Tarr assigned error in the trial court's unfavorable disposition of their *ex contractu* theory of liability, *they failed to re-urge it in the petition for certiorari* now before us. We must hence *leave undisturbed* that part of the Court of Appeals' opinion which affirms the nisi prius summary ruling for Republic and Holman on the plaintiffs' *ex contractu* theory. The Supreme Court will *not* review issues *resolved* by the Court of Appeals but *not retendered* on certiorari. *Hough v. Leonard,* Okl., 867 P.2d 438, 445–46 (1993); *Ford v. Ford,* Okl., 766 P.2d 950, 952 (1989).

**4.** For a general discussion of the distinction between *federal* and *state standing* concepts, see *Toxic Waste Impact Group, Inc. v. Leavitt,* Okl., 890 P.2d 906, 913 (1994) (Opala, J., concurring).

**5.** *Agency* is a "contract by which one person, with greater or less discretionary powers, undertakes to represent another in certain business relations." F. Wharton, Agency and Agents (1876); *see also* Restatement of Agency (Second) § 1, which defines agency as:

"... the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

For a history of common-law agency, see B.S. Markesinis and R.J.C. Munday, An Outline of the Law of Agency pp. 1–225 (Butterworths 1992).

**6.** *Officious volunteers* are those who introduce themselves into matters which do not concern them and do something which they are neither legally nor ethically bound to do *or which is not*

Tarr's behalf, any injury to the property or harm from the agent's (Gray's) transaction can be redressed *ex delicto*.[7]

▮ In their briefs Republic and Holman assure us they knew nothing of Tarr or of his interest in the insured property until the present action was brought. Gray represents that Tarr *authorized* her to procure the insurance policy. Whether Gray and Tarr did, at the time she purchased the fire-loss coverage, stand vis-á-vis each other as agent and principal presents a *factual dispute* which is unfit for summary disposition and hence remains unresolved by the trilogy of the trial court's critical summary rulings of December 14, February 16 or March 7. Tarr's standing to sue cannot be denied *anterior* to determining Gray's status *qua* Tarr's agent.[8]

### III

### BAD–FAITH REFUSAL TO SETTLE A CLAIM IS *FAIRLY COMPRISED* IN THE ERRORS ASSIGNED FOR APPELLATE REVIEW BY GRAY AND TARR'S PETITION IN ERROR

▮ Without specifically referencing *bad-faith refusal to settle a claim*[9] in section "D"[10] of their joint petition in error, Gray and Tarr challenge as erroneous the nisi prius conclusion that Gray did *not* have an *insurable interest* in the property destroyed by fire. The insureds' omission is not fatal to preserving for appellate review *bad-faith refusal to pay a claim*. That issue is *fairly comprised* within the appellants' assignment of errors.[11] Republic's refusal to settle Gray's claim is actionable if it can be established that, when the insurer's actions are measured by the facts then *known* and *knowable* to it, its failure to recognize Gray's [or Tarr's, if then known as her principal] insurable interest in the covered property was in bad faith.[12]

▮ A petition in error should be construed as an entirety.[13] In summarizing the case[14] Gray and Tarr described their legal action as one for "bad faith refusal to settle a claim" for loss by fire to property in which they had an *insurable interest*. The statement of "issues and errors proposed to be raised on appeal," when read in conjunction with the "summary of case," is clearly suffi-

---

in pursuance of the protection of another's interest. *Booker v. Sears Roebuck & Co.*, Okl., 785 P.2d 297, 310 (1990); *Kelly v. Tyra*, 103 Minn. 176, 114 N.W. 750, 752 (1908).

7. See RESTATEMENT OF AGENCY (SECOND) § 316(1) which states:

"A person who ... intentionally interferes with the performance of the principal's business by the agent is subject to liability to the principal for the harm caused to him."

8. By resting its March 7 order upon the one-year limitation in the insurance contract, the trial court attempted to avoid ruling on whether Tarr's tort remedy against Republic and Holman was timely invoked. Its order erroneously reasons that since the *insureds' claim* was brought more than one year after the operative event, *i.e.*, the June 4 fire, *it was contractually barred regardless of which theory is urged*. Because our jurisprudence affords a two-year limitation for a tort action based on bad-faith refusal to settle a claim, *Lewis v. Farmers Ins. Co., Inc.*, Okl., 681 P.2d 67, 70 (1984), the trial court's reasoning is clearly flawed. *See also McGehee v. State Ins. Fund*, Okl., 904 P.2d 70 (1995).

9. *Bad-faith refusal to settle a claim* was first recognized as a distinct tort in *Christian v. Amer-*

*ican Assur. Co.*, Okl., 577 P.2d 899, 901 (1978). The remedy rests on the insurer's *implied-in-law* duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received. *Id.* at 901. While numerous items of damage may result from one injurious occurrence, the party who seeks to recover for an insured loss *has but a single cause of action*, although *the claim may be advanced concurrently on ex contractu and ex delicto* theories. *Mann v. State Farm Mut. Auto. Ins. Co.*, Okl., 669 P.2d 768, 772 (1983).

10. Section D of the petition in error calls for the appellant to identify the "issues and errors proposed to be raised on appeal."

11. *Markwell v. Whinery's Real Estate, Inc.*, Okl., 869 P.2d 840, 843 (1994).

12. *Buzzard v. McDanel*, Okl., 736 P.2d 157, 161 (1987) (Opala, J., concurring).

13. *Bane v. Anderson, Bryant & Co.*, Okl., 786 P.2d 1230, 1234 (1989).

14. *See* Gray and Tarr's petition in error, exhibit B, "Summary of Case".

cient to preserve for review the insureds' claim for bad-faith refusal to settle.[15]

## IV

## THE *RECORD* OF SUMMARY ADJUDICATION PROCESS *REVEALS A HOST* OF DISPUTED FACTS ON MATERIAL ISSUES

### A

### THE NATURE OF SUMMARY PROCESS

The focus in summary process is *not on* facts a plaintiff *might* be able to prove at trial (*i.e.*, the legal sufficiency of evidence that could be adduced) but rather on whether the *evidentiary materials* as a whole (a) show *undisputed facts* on some or all material issues and (b) will support but a *single inference* in favor of a successful movant's quest for relief. Summary adjudication process—a special pretrial procedural track to be conducted with the aid of *acceptable probative substitutes*[16]—is a *search for undisputed material fact issues* that may be resolved without forensic combat. It is a method for identifying and isolating non-triable fact issues, not a device for defeating the opponent's right to trial by jury. Only that evidentiary material which entirely *eliminates from trial some or all fact issues* may afford legitimate support for nisi prius resort to summary process.

### B

### THE RECORD WILL NOT SUPPORT A SUMMARY RULING THAT REPUBLIC'S REFUSAL TO SETTLE GRAY'S CLAIM WAS *NOT* IN BAD FAITH

Inherent in the *summary* judgment for Republic on Gray's (and Tarr's) tort theory of insurer's liability is the trial court's determination that (a) Gray did *not* possess an *insurable interest* in the property and (b) the facts known or knowable to Republic at the time of the claims's rejection legally support its refusal to pay the indemnity. *Before* summary disposition of this case could be effected, the trial judge was duty-bound to ascertain—from the evidentiary material before him—that as a matter of law Gray [or Tarr, if her principal] did *not* and could *not* demonstrate she would gain some economic advantage by the insured property's continued existence or, in the alternative, *that she [or Tarr, if her principal] did not suffer some economic detriment from its loss or destruction.*[17] The law's "factual expectation" standard, adopted in *Snethen,*[18] is today the Oklahoma test for use in ascertaining a person's insurable interest. Equating *insurable interest* with a *legally cognizable estate*[19] is no longer sanctioned by our jurisprudence.[20]

The February 16 nisi prius order, here under review, rests upon the conclusions that (1) Tarr held *record title* to the insured property and (2) Gray—a stranger to title—and her son stood vis-á-vis each other in a creditor/debtor relationship. The record does not disclose that the trial court applied the "factual expectation" test. Because the *sparse evidentiary material* supplied for the trial court's use in assaying Gray's claimed stake in the premises supports *opposite inferences* concerning the nature or quantum of Gray's own protectible interest in the destroyed property, the nisi prius *summary* rulings that (1) her interest was *not* insurable and (2) the insurer's refusal to settle was *not* in bad faith cannot be sustained. These issues present disputed facts.

---

15. *Nilsen v. Tenneco Oil Co.*, Okl., 614 P.2d 36, 38 (1980).

16. "Acceptable probative substitutes" are those which may be used as "evidentiary materials" in the summary process of adjudication. *Seitsinger v. Dockum Pontiac Inc.*, Okl., 894 P.2d 1077, 1080–81 (1995); *Davis v. Leitner*, Okl., 782 P.2d 924, 926–27 (1989).

17. This test is nominated the "factual expectation" test. *Snethen v. Okl. U. of Farmers Ed. & Co-op. U.*, Okl., 664 P.2d 377, 380 (1983). When

applied, it suffices to negate any notion of an unlawful "wager contract". *Id.* at 379–80.

18. *Snethen, supra* note 17 at 380.

19. The now defunct "legally cognizable interest" test requires that property may be treated as *insurable only* if the insured has a *legal* or *equitable* right enforceable either at law or in chancery. *Lucena v. Crauford*, 127 Eng.Rep. 630, 651 [1806]. *See also Snethen, supra* note 17 at 380.

20. *Snethen, supra* note 17 at 380.

## C

### THE RECORD DOES NOT SUPPORT BUT A SINGLE INFERENCE THAT HOLMAN'S PROCUREMENT OF THE FIRE INSURANCE POLICY IN GRAY'S NAME WAS *NOT* NEGLIGENT AS A MATTER OF LAW

The record reveals a dispute between Gray and Holman concerning whether she informed him that her son—Tarr—held legal title to the property sought to be insured. The nisi prius February 16 order, resolving in favor of Republic and Holman *"all"* of Gray's theories of liability, rests on a determination that Gray did not have an "insurable interest" in the covered property. *Regardless* of the Gray interest's insurability, it is the trier of fact who must determine whether Gray did *in fact* apprise Holman that her son held legal title to the insured premises. This fact is *critical* to Tarr's (*qua* principal) and to Gray's (*qua* agent) *tort* claim for Holman's *negligence* in procuring the arranged-for indemnity policy.

Whether Holman knew Gray did *not* hold legal title to the premises when he secured the fire insurance policy in her name presents a *controverted fact issue.* The summary adjudication process that resolves the insureds' *tort* claim for Holman's negligence is hence flawed.

## V

### SUMMARY

While the insureds advanced at nisi prius both *ex contractu* and *ex delicto* theories, *only the latter stands preserved for our certiorari review.* Republic and Holman challenged Tarr's standing to press a claim for the fire loss. The record discloses that *no* inquiry was made below (a) to ascertain if *in fact* Gray was Tarr's agent and had been authorized to secure fire-loss coverage for *his* property or (b) to probe into the nature and extent of *Gray's own* protectible interest, if any she had, in the destroyed premises. If it be determined that at the time Gray purchased the fire insurance policy Tarr was *either her disclosed or undisclosed* principal,

he can bring a tort action to redress any injury to his property or harm to any of his interest occasioned by Holman's negligence.

A petition in error must be construed as an entirety. The issue of *bad-faith refusal to settle a claim* is clearly preserved for appellate review by the "summary of case", when that part of Gray and Tarr's *joint petition in error* is read in conjunction with its "Section D" assignments.

Summary adjudication process is a search for *non-triable* facts—not a technique for defeating the opponent's right to trial by jury. The evidentiary materials as a whole reveal *disputed material* facts concerning the insurer's *bad-faith refusal to settle* and about Holman's *negligence.* The February 16 order, when viewed in light of the record before us, fails to disclose that the trial court applied the correct criteria—under the currently in force "factual expectation" test [21]—to determine if Gray, in her *individual capacity,* had an insurable interest in the covered property. Because several facts *material* to Gray and Tarr's *ex delicto* theory of liability are controverted, summary judgment for Republic cannot be sustained. The summary ruling for Holman is equally insupportable.

The Court of Appeals' pronouncement for Republic and Holman on the insureds' *ex contractu* theory of liability is left undisturbed by today's opinion. After review of the errors addressed to *the tort theories* (pressed by both Gray and Tarr against the insurer and against Holman),

THE COURT OF APPEALS' OPINION IS MODIFIED IN PART, THE NISI PRIUS SUMMARY JUDGMENT FOR THE DEFENDANTS IS REVERSED IN PART, AND THE CAUSE IS REMANDED WITH DIRECTIONS TO PROCEED IN A MANNER NOT INCONSISTENT WITH TODAY'S PRONOUNCEMENT.

ALMA WILSON, C.J., KAUGER, V.C.J., LAVENDER, OPALA, SUMMERS and WATT, JJ., concur.

---

**21.** *See Snethen, supra* note 17 at 380.

HODGES, SIMMS and HARGRAVE, JJ., concur in part and dissent in part.