2008 OK 6

Harold LIDDELL, Plaintiff/Appellant,

v.

Denise HEAVNER, Cleveland County Assessor, in Her Official Capacity, and Cleveland County Board of Equalization, Defendants/Appellees,

and

State of Oklahoma, Intervenor/Appellee.

No. 102,732.

Supreme Court of Oklahoma.

Jan. 29, 2008.

**1194**

Louis W. Bullock and Robert M. Blakemore, Miller Keffer Bullock Pedigo LLC, Tulsa, OK, for Appellant.

David L. Kinney and Scott D. Boughton, Assistant Attorneys General, Office of the Oklahoma Attorney General, Oklahoma City, OK, for Intervenor/Appellee.

Drew D. Webb, McAfee & Taft, Oklahoma City, OK, for Amicus Curiae, Oklahoma State Home Builders Association.

Julie L. Miller, Craig A. Crimmins, and Shelley A. Shelby, Oklahoma City, OK, for Amicus Curiae, Oklahoma State School Boards Association and Cooperative Council for Oklahoma School Administration.[1]

OPALA, J.

¶ 1 The principal and dispositive issue presented on certiorari is whether the terms of 68 O.S. Supp.2004 § 2817(I)[2] violate the fair cash value standard of Article X, § 8(A)(2) of the Oklahoma Constitution. We answer in the affirmative.[3]

**I**

### THE ANATOMY OF LITIGATION

¶ 2 In May 2004 Harold Liddell ("Liddell" or "Plaintiff") filed a complaint in the Cleveland County Board of Equalization ("Board"), alleging that Denise Heavner, the Cleveland County Assessor ("Assessor"), had grossly and systematically undervalued real property belonging to certain Cleveland County land developers in violation of the state and federal constitutions. Plaintiff sought a full investigation of all Cleveland County assessments for Tax Years 2003 and 2004, a reassessment of all realty found to be undervalued during those years, the collection of unpaid back taxes from the owners of any realty found to be undervalued, and the implementation of policies and procedures in the Assessor's office to prevent a recurrence of the alleged discriminatory pattern of real estate valuation.

¶ 3 After hearing argument on Liddell's complaint on 25 May 2004, **the Board sustained all the challenged valuations.** According to Liddell's district court petition, he was told at this proceeding that each of the properties about which he complained had been correctly valued pursuant to the provi-

---

1. Identified herein are only those counsel for the parties and amicus curiae whose names appear on the certiorari briefs.

2. For the pertinent terms of 68 O.S. Supp.2004 § 2817(I), *see infra* ¶ 17. The district court petition in this cause, filed on 4 June 2004, targeted assessments made in 2003 as well as in 2004. Although the challenged statute has undergone many revisions over the years, the same version was in effect on both assessment dates relevant to this proceeding. For the sake of simplicity, we will cite to the 2004 version of the statute.

3. This certiorari review is a companion case of the appeal in Cause No. 103,641, In the Matter of the 2005 Tax Assessment of Real Property Owned by BMI Construction Co., L.L.C., in which the county assessor challenges defensively the constitutionality of 68 O.S. Supp.2004 § 2817(I). The companion case also raises a non-constitutional defense, which survives the decision in this cause and will be disposed of by separate opinion.

sions 68 O.S. Supp.2004 § 2817(I) [hereinafter § 2817(I)].

¶ 4 Liddell appealed from the Board's decision to the Cleveland County District Court. In addition to the relief he had requested from the Board, Liddell now sought a judicial declaration that the provisions of § 2817(I) violate: (a) Article X, § 8(A)(2) of the Oklahoma Constitution and (b) the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.[4]

¶ 5 Assessor and Board ("defendants") moved to dismiss plaintiff's petition for lack of standing, failure to state a claim, and failure to include indispensable parties. Their motion was denied.[5] The trial court then granted the Attorney General leave to intervene in the cause to defend the constitutionality of § 2817(I). Upon counter motions by the Attorney General and Liddell for summary adjudication of the constitutional issue, the trial court ruled that the statute is constitutional. Liddell dismissed his remaining claims, the trial court entered its judgment in the case and Liddell appealed. The Court of Civil Appeals, Div. I, affirmed the trial court's judgment. We granted plaintiff's petition for certiorari and allowed the

parties to file supplemental briefs. Several interested entities were also given permission to file briefs as amici curiae.[6] We now vacate the opinion of the Court of Civil Appeals and reverse the trial court's judgment.

## II

### THE STANDARD OF REVIEW FOR APPEALABLE PRODUCTS OF SUMMARY PROCESS

¶ 6 Summary process—a special pretrial procedural track pursued with the aid of acceptable probative substitutes[7]—is a search for undisputed material facts which, *sans* forensic combat, may be utilized in the judicial decision-making process.[8] Summary relief is permissible where neither the material facts nor any inferences that may be drawn from uncontested facts are in dispute, and the law favors the movant's claim or liability-defeating defense.[9] Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or defense afford legitimate support for *nisi prius* resort to summary process for a claim's adjudication.[10]

4. Because we declare today that § 2817(I) conflicts with the state Constitution, we need not decide whether it also contravenes the federal Constitution.

5. Neither defendants nor intervenor sought review of the trial court's ruling regarding Liddell's standing to bring this proceeding in the district court. In the corpus of state procedural law, standing does not implicate jurisdiction as it does in the federal system. Hence, an error with respect to standing is waivable at the option of the defendant and, if not asserted on appeal, lies beyond the reach of our reviewing power. *Toxic Waste Impact Group, Inc. v. Leavitt*, 1994 OK 148, ¶ 3, 890 P.2d 906, 915 (Opala, J., concurring).

6. The Oklahoma State Home Builders Association filed an amicus brief in support of Assessor and Board. The Oklahoma State School Boards Association and the Cooperative Council for Oklahoma School Administration filed a joint amicus brief in support of plaintiff.

7. " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Okla. Memorial Hosp.*, 1995 OK 112, ¶ 15, n. 35, 909 P.2d 765, 773, n. 35. *See also Seitsinger*

*v. Dockum Pontiac, Inc.*, 1995 OK 29, ¶¶ 16–17, 894 P.2d 1077, 1080–81; *Davis v. Leitner*, 1989 OK 146, ¶ 15, 782 P.2d 924, 927.

8. The focus in summary process is not on the facts which might be proven at trial, but rather on whether the evidentiary material in the record tendered for elimination of trial reveals only undisputed material facts supporting but a single inference that favors the movant's quest for relief. *Polymer Fabricating, Inc. v. Employers Workers' Compensation Ass'n*, 1998 OK 113, ¶ 7, 980 P.2d 109, 112; *Hulsey v. Mid–America Preferred Ins. Co.*, 1989 OK 107, ¶ 8, n. 15, 777 P.2d 932, 936, n. 15.

9. To that end, the court may consider, in addition to the pleadings, items such as depositions, affidavits, admissions, answers to interrogatories, as well as other evidentiary materials which are offered in acceptable form without objection from other parties or are admitted over the challenging exception. *Polymer Fabricating, supra* note 8, at ¶ 8, 980 P.2d at 113; *Seitsinger, supra* note 7.

10. *Russell v. Bd. of County Comm'rs*, 1997 OK 80, ¶ 7, 952 P.2d 492, 497. *See also Gray v. Holman*, 1995 OK 118, ¶ 11, 909 P.2d 776, 781.

¶7 Summary relief issues stand before us for *de novo* review.[11] All facts and inferences must be viewed in the light most favorable to the non-movant.[12] Just as *nisi prius* courts are called upon to do in deciding whether summary relief is warranted in the first instance, so also do appellate tribunals bear an affirmative duty to test for its legal sufficiency all evidentiary material received in summary process as support for the relief granted.[13] Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary relief in its favor.[14]

## III

## THE CONSTITUTIONAL AND STATUTORY FRAMEWORK FOR THE VALUATION OF REAL PROPERTY TAXED AD VALOREM

¶8 The Legislature has plenary power to tax, subject only to constitutional restrictions and the will of the people expressed through elections.[15] All non-exempt property is taxed ad valorem unless the Legislature provides otherwise through the enactment of a substitute tax.[16] Ad valorem taxes are direct taxes on real and personal property based on the property's value.[17] Determining the value of all county property for purposes of ad valorem taxation is the duty of the county assessor.[18]

¶9 Until 1972 our fundamental law, Article X, § 8, directed that *all property* subject to taxation on an ad valorem basis be assessed up to a specified percentage of its fair cash value, estimated at the price it would bring at a fair voluntary sale.[19] In *Bliss Hotel Co. v. Thompson*,[20] we held that the term "fair cash

11. An order that grants summary relief, in whole or in part, disposes solely of law questions. It is reviewable by a *de novo* standard. *Brown v. Nicholson*, 1997 OK 32, ¶5, 935 P.2d 319, 321. *See also Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶14, 859 P.2d 1081, 1084 ("Issues of law are reviewable by a *de novo* standard and an appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings.").

12. *Carmichael v. Beller*, 1996 OK 48, ¶2, 914 P.2d 1051, 1053.

13. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶10, 743 P.2d 682, 685 (*approved for publication* by the Oklahoma Supreme Court).

14. It is not the purpose of summary process to substitute a trial by affidavit for one by jury. Rather, it is to afford a method of summarily terminating a case (or eliminating from trial some of its issues) when only questions of law remain. *State ex rel. Fent v. State ex rel. Okla. Water Resources Bd.*, 2003 OK 29, ¶14, n. 31, 66 P.3d 432, 440, n. 31; *Bowers v. Wimberly*, 1997 OK 24, ¶18, 933 P.2d 312, 316; *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶15, 586 P.2d 726, 730.

15. *In re Oneok Field Services Gathering, LLC*, 2001 OK 116, ¶8, 38 P.3d 900, 903.

16. The provisions of 68 O.S.2001 § 2804 state:

"All property in this State, whether real or personal, except that which is specifically exempt by law, and except that which is relieved of ad valorem taxation by reason of the pay-ment of an in lieu tax, shall be subject to ad valorem taxation."

17. *Twin Hills Golf & Country Club, Inc. v. Town of Forest Park*, 2005 OK 71, ¶12, 123 P.3d 5, 8.

18. See the provisions of 68 O.S.2001 § 2819, which state:

"Taxable values of real and personal property shall be established in accordance with the requirements of Sections 8, 8B and 8C of Article X of the Oklahoma Constitution. The county assessor shall determine the taxable value of all taxable property that the assessor is required by law to assess and value and shall determine such taxable value in accordance with the requirements of Sections 8, 8B and 8C of Article X of the Oklahoma Constitution."

19. Until 1958, all property taxed ad valorem was assessed at one hundred percent (100%) of its fair cash value. In 1958, Article X, § 8 was amended to reduce the assessment percentage to thirty-five percent (35%). Until 1972 Article X, § 8 stated in pertinent part:

"All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale, except real property and tangible personal property shall not be assessed for taxation at more than thirty-five per cent (35%) of its fair cash value, estimated at the price it would bring at a fair voluntary sale; ..."

20. 1962 OK 234, 378 P.2d 319.

value" was synonymous with the term "fair market value" and that both terms mean "the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration *all uses* to which the land was adapted and might in reason be applied." [21] (emphasis added)

¶ 10 Article X, § 8 was amended in 1972.[22] While it continued to require valuation of realty at its fair cash value, estimated at the price it would bring at a fair voluntary sale, the amendment qualified that concept by tying it to the property's actual use or its previous use classification. In furtherance of this new valuation standard, the amendment empowered the Legislature to classify real property by use for the purpose of achieving statewide uniformity in assessment procedures.[23] The purpose of the [1972] amendment was to change the standard governing the valuation of real property from market value to use value.[24]

¶ 11 Article X, § 8 was last amended in 1996. The provisions applicable to the valuation of real property were set out in a separate provision from those applicable to the valuation of personal property and the phrase "estimated at the price it would bring at a fair voluntary sale" was removed from its association with real property valuation. The terms of Article X, § 8(A)(2) have provided since 1996:

"§ 8. Valuation of property for taxation—Limit on percentage of fair cash value—Approval by voters.

A. Except as otherwise provided in Article X of this Constitution, beginning January 1, 1997, all property which may be taxed ad valorem shall be assessed for taxation as follows:

*****

2. Real property shall not be assessed for ad valorem taxation at a value less than eleven percent (11%) nor greater than thirteen and one-half percent (13.5%) of its fair cash value for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preceding the first day of January on which the assessment is made. The transfer of property without a change in its use classification shall not require a reassessment based exclusively upon the sale value of such property. In connection with the foregoing, the Legislature shall be empowered to enact laws defining classifications of use for the purpose of applying standards to facilitate uniform assessment procedures in this state; ..."

¶ 12 In addition to amending Article X, § 8, the people also approved in 1996 a new constitutional provision relating to the valuation of real property. The provisions of Article X, § 8B prohibit county assessors from increasing the fair cash value of any parcel of real property by more than five percent (5%) per year unless title to the property is transferred, changed, or conveyed to another per-

---

**21.** *Id.* at ¶ 17, 378 P.2d at 321.

**22.** The provisions of Article X, § 8, Okla. Const., as amended in 1972, state in pertinent part:

"All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale, except real property and tangible personal property shall not be assessed for taxation at more than thirty-five percent (35%) of its fair cash value, estimated at the price it would bring at a fair voluntary sale. Provided, however, that no real property shall be assessed for ad valorem taxation at a value greater than thirty-five percent (35%) of its fair cash value *for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preceding the first day of January on which the assessment is made.*

Provided, further, that the transfer of property without a change in its use classification shall not require a reassessment based exclusively upon the sale value of such property. In connection with the foregoing, the Legislature shall be empowered to enact laws defining classifications of use *for the purpose of applying standards to facilitate uniform assessment procedures in this state ....*" (emphasis added)

**23.** *Cantrell v. Sanders,* 1980 OK 43, ¶ 14, 610 P.2d 227, 231 (noting that entirely different procedures are used for the valuation of residential, commercial, industrial, and agricultural properties, and stating that it would be desirable to have uniform standards of classification of property in order to facilitate the application of uniform procedures).

**24.** *Id.* at ¶ 14, 610 P.2d at 231.

son, or improvements are made to the property, in which case the property is to be assessed for that year based on its fair cash value as provided in Article X, § 8.[25]

¶ 13 Following the 1972 amendment to Article X, § 8, we modified our *Bliss Hotel* definition of fair cash value to give effect to the new constitutional language linking the valuation of real property to use. In *Tulsa County Board of Equalization v. Independent School District No. 1 of Tulsa County,*[26] we redefined fair cash value to mean "the price which the property would bring at a fair voluntary sale between a purchaser willing but not obliged to buy the property [and] an owner, willing but not obliged to sell it, *taking into consideration the property's current use.*"[27] We reiterated in *Tulsa County Board of Equalization* that fair cash value is synonymous with fair market value,[28] and departed from the *Bliss Hotel* definition only in regard to the uses of the property that may be taken into account in determining fair market value. **Nothing in our jurisprudence since *Tulsa Board of Equalization* suggests that fair cash value means anything other than fair market value qualified by the element of use.**

¶ 14 The provisions of 68 O.S.2001 § 2817(G) notwithstanding,[29] the Legislature, too, has defined fair cash value in terms of fair market value qualified by use. The statutory definition, codified at 68 O.S.2001 § 2802(18), provides that fair cash value means:

> "the value or price at which a willing buyer would purchase property and a willing seller would sell property if both parties are knowledgeable about the property and its uses and if neither party is under any undue pressure to buy or sell **and** for real property shall mean the value for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preceding the applicable January 1 assessment date; . . ."[30] (emphasis added)

The first complete predicate in this simple sentence restates the usual definition of fair market value, while the second complete predicate, joined to the first by the conjunction "and," merely qualifies the uses which may be taken into account when determining fair market value.[31]

---

**25.** The pertinent provisions of Article X, § 8B, Okla. Const., state:

> "Despite any provision to the contrary, the fair cash value of any parcel of locally assessed real property shall not increase by more than five percent (5%) in any taxable year. The provisions of this section shall not apply in any year when title to the property is transferred, changed, or conveyed to another person, or when improvements have been made to the property. If title to the property is transferred, changed, or conveyed to another person, the property shall be assessed for that year based on the fair cash value as set forth in Section 8 of Article X of this Constitution. If any improvements are made to the property, the increased value to the property as a result of the improvement shall be assessed for that year based on the fair cash value as set forth in Section 8 of Article X of this Constitution. . . ."

**26.** 1987 OK 83, 743 P.2d 1076.

**27.** *Id.* at ¶ 8, 743 P.2d at 1078, citing *Bliss Hotel,* supra note 20 at ¶ 17, 378 P.2d at 321.

**28.** *Id.*

**29.** The provisions of 68 O.S.2001 § 2817(G) state:

> "When the term fair cash value or the language fair cash value, estimated at the price it would bring at a fair voluntary sale is used in the Ad Valorem Tax Code, in connection with and in relation to the assessment of real property, it is defined to mean and shall be given the meaning ascribed and assigned to it in this section and when the term or language is used in the Code in connection with the assessment of personal property it shall be given its ordinary or literal meaning."

The intent of this provision is to clarify that when the term fair cash value is used in § 2817 in connection with the valuation of real property, its meaning is to be derived from the definition in § 2817(B). The provisions of § 2817(G) do not express a belief by the Legislature that it has unfettered license to redefine fair cash value on a case-by-case basis.

**30.** A 2005 amendment that changed the defined term to "actual fair cash value," but which made no substantive change to the definition, is not implicated in the case at bar.

**31.** This definition appears in substantially the same form in another provision of the Ad Valorem Tax Code, 68 O.S.2001 § 2801 et seq. The provisions of 68 O.S.2001 § 2817 set out rules for the listing and assessment of taxable real and personal property. The provisions of § 2817(B) state:

¶ 15 The Legislature has also adopted a comprehensive set of statutory procedures to guide assessors in determining the fair cash value of real property. Assessors are to physically inspect each parcel of taxable real property in a county on a four year inspection cycle.[32] This physical inspection is to consist of "such examination as will provide adequate data from which to make accurate valuations."[33] Assessors must gather information from the physical inspection that is relevant to the type of property being inspected, its use category, and the valuation methodology to be used to establish the property's fair cash value.[34] Assessors must gather sufficient information "to establish the fair cash value of the property in accordance with accepted standards for mass appraisal practice."[35] They must also maintain for each parcel of real property in the county a comprehensive sales file that contains *inter alia* a description of relevant property char-

acteristics, sales price information, and such other information as may be required in order to establish a property's fair cash value.[36]

## IV

## THE PROVISIONS OF § 2817(I) VIOLATE THE FAIR CASH VALUE STANDARD MANDATED BY ARTICLE X, § 8(A)(2) OF THE OKLAHOMA CONSTITUTION

¶ 16 In assessing the conformity of a challenged state statute to our fundamental law, we are guided by well-established principles. The Constitution is the bulwark to which all statutes must yield.[37] In determining the validity of a legislative enactment, effect must be given to the intent of the Constitution's framers and the people adopting it[38] without regard to our own view of a provision's propriety, wisdom, desirabili-

"All taxable real property shall be assessed annually as of January 1, at its fair cash value, estimated at the price it would bring at a fair voluntary sale for:
1. The highest and best use for which the property was actually used during the preceding calendar year; or
2. The highest and best use for which the property was last classified for use if not actually used during the preceding calendar year...."

**32.** See the provisions of 68 O.S.2001 § 2820(A), which state:
"Each county assessor shall conduct a comprehensive program for the individual visual inspection of all taxable property within his respective county. Each assessor shall thereafter maintain an active and systematic program of visual inspection on a continuous basis and shall establish an inspection schedule which will result in the individual visual inspection of all taxable property within the county at least once each four (4) years."

**33.** See the provisions of 68 O.S.2001 § 2821(A), which state:
"Each county assessor shall cause real property to be physically inspected as part of the visual inspection cycle and shall require such examination as will provide adequate data from which to make accurate valuations."

**34.** See the provisions of 68 O.S.2001 § 2821(B), which state:
"The information gathered from the physical inspection shall be relevant to the type of property involved, its use category, the valuation methodology to be used for the property,

whether the methodology consists of the cost approach, an income and expense approach or sales comparison approach, and shall be complete enough in order to establish the fair cash value of the property in accordance with accepted standards for mass appraisal practice."

**35.** See the provisions of 68 O.S.2001 § 2802(1), which state:
"Accepted standards for mass appraisal practice" means those standards for the collection and analysis of information about taxable properties within a taxing jurisdiction permitting the accurate estimate of fair cash value for similar properties in the jurisdiction either without direct observation of such similar properties or without direct sales price information for such similar properties using a reliable statistical or other method to estimate the values of such properties; ..."

**36.** See the provisions of 68 O.S.2001 § 2821(E), which state:
"The county assessor shall maintain a comprehensive sales file for each parcel of real property within the county containing relevant property characteristics, sales price information, adjustments to sales price for purposes of cash equivalency, transaction terms and such other information as may be required in order to establish the fair cash value of taxable real property."

**37.** *Draper v. State,* 1980 OK 117, ¶ 8, 621 P.2d 1142, 1145.

**38.** *In re Askins Properties,* 2007 OK 25, ¶ 12, 161 P.3d 303, 311.

ty, necessity, or practicality as a working proposition.[39] Our search for the framers' and electorate's intent is to be conducted by examining the text of the instrument itself and when the text is not ambiguous, the court may not look for a meaning outside its bounds.[40] In reviewing a legislative enactment for conformity to the organic law, we presume that, very much like the judiciary, the Legislature conducts its business with due regard for the framers' and people's intent. Hence, a duly-enacted statute will be presumed to conform to the state and federal Constitutions and will be upheld unless it is clearly, palpably and plainly inconsistent with the Constitution.[41] A heavy burden rests on the party challenging a statute's constitutionality to establish that its enactment is in excess of legislative power.[42]

¶ 17 Liddell challenges the constitutionality of the statutory ascription of meaning to the term fair cash value as applied to lots in platted additions and subdivisions in the provisions of § 2817(I). That section states in pertinent part:

"[T]he fair cash value of a lot in any platted addition or a subdivision in a city, town or county zoned for residential, commercial, industrial or other use shall be deemed to be the total purchase price paid by the developer of the addition or subdivision for the land comprising the platted addition or subdivision divided by the number of lots contained in the addition or subdivision until the lot with building or buildings located thereon shall have been conveyed to a bona fide purchaser or shall have been occupied other than as a sales

office by the owner thereof, or shall have been leased, whichever event shall first occur."

Liddell argues that the valuation formula in the challenged statute bears no relationship to the Constitutional mandate that real property be assessed at its fair cash value. He contends that fair cash value is synonymous with fair market value and cites to the court's definition of fair cash value in *Tulsa County Board of Equalization* for its more expansive exposition of the term's meaning.[43] Liddell argues that reliance on the § 2817(I) formula results in an undervaluation of property owned by developers in violation of Article X, § 8(A)(2), which prohibits the undervaluation of property when it is taxed ad valorem.[44] The Legislature, Liddell says, may specify the means and methods of valuation, but may not direct assessors to undervalue property when taxing it based on value.

¶ 18 The State argues that § 2817(I) is a valid exercise of the Legislature's power to create classifications for purposes of taxation. The State identifies two constitutional sources of this power: (1) the provisions of Article X, § 22, Okla. Const., which give the Legislature the power to classify property for purposes of taxation and to value property by different means or methods[45] and (2) the third sentence of Article X, § 8(A)(2), which empowers the Legislature "to enact laws defining classifications of use for the purpose of applying standards to facilitate uniform assessment procedures in this state."[46]

¶ 19 In its brief amicus curiae the Oklahoma State Home Builders Association ar-

39. *Id.*

40. *Draper, supra* note 37.

41. *Reherman v. Okla. Water Res. Bd.,* 1984 OK 12, ¶ 11, 679 P.2d 1296, 1300.

42. *Askins Properties, supra* note 38 at ¶ 12, 161 P.3d at 310; *Fent v. Okla. Capitol Improvement Auth.,* 1999 OK 64, ¶ 3, 984 P.2d 200, 204.

43. *Supra* note 26 at ¶ 8, 743 P.2d at 1078, *citing Bliss Hotel supra* note 20 at ¶ 17, 378 P.2d at 321.

44. *Save Ad Valorem Funding for Students v. Okla. Dept. of Environmental Quality,* 2006 OK CIV

APP 53, ¶ 9, 135 P.3d 823, 827, *cert. denied and approved for publication by Order of the Supreme Court, quoting In re Diehr,* 1935 OK 1015, ¶ 18, 50 P.2d 725, 728, *quoting In re Okla. Nat'l Life Ins. Co.* 1918 OK 113, ¶ 21, 173 P. 376, 381.

45. The terms of Article X, § 22, Okla. Const., state:

"Nothing in this Constitution shall be held, or construed, to prevent the classification of property for purposes of taxation; and the valuation of different classes by different means or methods."

46. *See supra* ¶ 11 for the text of Article X, § 8(A)(2).

gues that § 2817(I) reflects the Legislature's judgment that land under development and construction should be assessed using the same use-based valuation approach applied to farmland, which is valued for ad valorem tax purposes based on its use as farmland regardless of the price it might bring on the open market based on the different use of nearby land for more lucrative purposes.

¶ 20 To arrive at fair cash value, an assessor must do two things: determine how the real property being assessed was actually used or classified for use during the assessment year and obtain relevant and reliable market data about the value of property of that kind. The Legislature has provided guidance in making both of these decisions, **first**, by identifying three use categories: residential, commercial-industrial, and agricultural,[47] **and second**, by adopting three standard property appraisal approaches: the comparable sales, cost, and income capitalization methods.[48] The Legislature is not limited to the three existing use categories and may recognize others where circumstances warrant a particularized valuation approach.

¶ 21 The first sentence of § 2817(I) says, "If any real property shall become taxable after January 1 of any year, the county assessor shall assess the same and place it upon the tax rolls for the next ensuing year." Under the provisions of § 2817(I), the filing of a plat triggers the separate taxation of the lots drawn on the plat. They must be separately assessed and placed on the tax rolls for the next ensuing year. The challenged portion of § 2817(I) then supplies a method of arriving at their fair cash value for ad valorem tax purposes. It instructs assessors to deem the fair cash value of each platted lot in an addition or subdivision as a pro-rata share of the purchase price of the underlying tract of land on the date of purchase and to

freeze that valuation until a building is constructed on the lot and it is either conveyed to a bona fide purchaser, leased, or occupied by the owner as other than a sales office.

¶ 22 The provisions of § 2817(I) do not define the terms platted addition or subdivision nor do they define the term lot. Generally, a plat is defined as a map of a subdivision and a lot as a parcel of land on a plat that is separately owned and capable of being separately conveyed. Platting indicates an intent to use the land for a particular purpose in the future. In and of itself, platting does not have any physical impact on the land. It may or may not entail the contemporaneous installation of streets, utilities, and other indicia of development. Land that is platted may continue to be used as it was used prior to platting, it may not be used at all for some period of time, or it may be at any stage of completion toward becoming fully developed building sites.

¶ 23 The Legislature, in the exercise of its authority to categorize property by use, may recognize that land with development potential requires a specialized means of determining its fair cash value. As proto-residential or proto-commercial/industrial property, platted lots do not necessarily have a use value commensurate with their fair market value if and when sold as individual units. The fair cash value of the land as a whole may more accurately represent the individual platted lots' current worth. Recognizing this, the Legislature in the provisions of § 2817(I) has implicitly created a separate use category for platted lots and determined that their fair market value is best measured by looking to the value of the underlying tract. **This the Legislature is constitutionally empowered to do. What it may not constitutionally do and what it has done in § 2817(I) is to potentially divorce the valuation of platted**

---

**47.** See the provisions of 68 O.S.2001 § 2802(29), which state:

"Use category means a subcategory of real property, that is either agricultural use, residential use or commercial/industrial use but does not and shall not constitute a class of subjects within the meaning of the Oklahoma Constitution for purposes of ad valorem taxation; ..."

**48.** The "cost approach" estimates the current construction cost of improvements, subtracts accrued depreciation and adds the value of the land. 68 O.S.2001 § 2802(14). The "income and expense approach" considers the present value of the projected income stream. 68 O.S. 2001 § 2802(20). Finally, the "sales comparison approach" arrives at fair market value through collection, verification, and screening of sales data. 68 O.S.2001 § 2802(25).

lots from the fair market value of the underlying tract of land *as of the relevant assessment date.* It arrested the process of annual reassessment required by law.

¶ 24 The provisions of § 2817(I) invariably value platted lots at the acquisition cost of the underlying tract of land, regardless of the circumstances of the land's purchase, the time of the purchase in relation to the relevant assessment date, and without considering whether the land remains in the same condition as it was when it was acquired. Excluded from consideration are such things as whether the property was acquired in an arm's length transaction, any compulsion in the sale, changes in the real estate market between the date of the tract's purchase and the relevant assessment date, and alterations in the condition of the property. The acquisition cost of the tract as a whole may be a factor in arriving at the value of platted lots, **but fixing it rigidly as the sole and conclusive factor violates the fair cash value standard of Article X, § 8(A)(2).**

¶ 25 Moreover, our Constitution mandates annual reassessments of real property, subject to the 5% cap on increases provided by Article X, § 8B. **The provisions of § 2817(I) freeze the initial valuation of a lot until a building is constructed on it and it is either conveyed to a bona fide purchaser, leased, or occupied by the owner for a purpose other than as a sales office.** The fair cash value of the land may change for many reasons, including the progress made away from a single tract of land that is merely adaptable to subdivision purposes as evidenced by a plat and toward the actual physical creation of lots suitable for sale to many individual buyers. The discrepancy Liddell complains of between the fair cash value of platted lots as measured by the fair market value of the underlying tract as a whole and the fair cash value of individual lots that have been fully developed and sold as building sites can only be addressed in conformity to Article X, § 8B. A freeze at the property's initial valuation is manifestly in-

consistent with our fundamental law's command.

¶ 26 The dissent would uphold the constitutionality of § 2817(I) on the basis of the language in Article X, § 8 that permits the fair cash value of property to be based upon a property's earlier classification for use during the previous calendar year. Because newly platted lots must be classified, assessed and placed on the tax rolls for the next ensuing year,[49] the previous classification to which reference is made in Article X, § 8 would be the classification assigned to the lots during the year they are platted. That classification would be residential or commercial/industrial as the case may be, the same classification the lots would receive based on their current use as of the assessment date. This approach in no way answers the question posed by this case of whether a lot classified as residential or commercial/industrial can be valued **for an indefinite period of time** based on a pro-rata portion of the purchase price of the tract of land from which the lots are carved.

¶ 27 The dissent also relies upon the sentence in Article X, § 8 that states: "[t]he transfer of property without a change in its use classification shall not require a reassessment based exclusively upon the sale value of such property." This provision is not applicable to newly platted lots, as to which no transfer is effected by virtue of being platted.

¶ 28 Finally, the dissent misinterprets the court's decision to mean that platted lots must invariably be valued at their fair market value. This is not our intent. The legislature may create a valuation method that takes into account how developers use land platted for development. We say today only that such method, which must account for the property's use as a residential or commercial/industrial lot, cannot indefinitely lock in a value.

## V

## SEVERABILITY ANALYSIS

 ¶ 29 A severability analysis is necessary when some, but not all, provisions

---

**49.** *See* the first sentence of 68 O.S. Supp.2004 § 2817(I), which states: "If any real property shall become taxable after January 1 of any year, the county assessor shall assess the same and place it upon the tax rolls for the next ensuing year."

of an enactment are to be condemned as unconstitutional and hence void.[50] Its purpose is to determine whether non-offending statutory provisions may survive as valid after the clauses rejected as invalid are separated from the whole. The severability of a statutory enactment is not dependent upon the presence of an express severability clause within the particular enactment's text.[51] Survival of untainted statutory provisions that remain is appropriate when the valid and voided (because unconstitutional) provisions are not so "inseparably connected with and so dependent upon" each other that the surviving provisions would not have otherwise been enacted.[52] Consideration must be given to whether the surviving provisions must rely on the severed portion for meaning or enforcement.[53]

¶ 30 Because § 2817(I)'s valuation formula for platted lots in additions or subdivisions is constitutionally infirm, we must also determine whether it can be severed from the remainder of the statute, leaving that which is left operational. The general subject matter covered by the provisions of § 2817(I) consists of guidance to assessors in dealing with newly taxable real property. Those provisions not involved in today's pronouncement are not dependent upon the presence of the platted lot valuation formula for their meaning or enforcement. In somewhat different form, the untainted provisions actually predate the enactment of the platted lot valuation formula, a clear indication that they should be regarded as operationally independent of the voided provision. We therefore hold that the platted lot valuation provision of § 2817(I) is severable from the remainder of the statute.

## VI

## THE PRESUMPTIVE VALIDITY OF 2817(I) CALLS FOR THE PROSPECTIVE APPLICATION OF TODAY'S DECISION

¶ 31 Today's pronouncement invalidating the valuation formula for platted lots in additions or subdivisions contained in § 2817(I) casts into doubt the accuracy of valuations made in reliance on the statute. While the instant case involves the valuation of property in Cleveland County alone, it potentially throws into a state of uncertainty and even chaos valuations of platted lots made in every county in this state. All county assessors statewide have until now stood under an obligation to value property held by a developer according to the formula contained in § 2817(I). Ordinarily, an unconstitutional statute confers no rights, creates no liability, and affords no protection.[54] Yet, there are well-recognized and well-reasoned

---

50. Considerations relevant to a severability analysis are outlined in the provisions of 75 O.S.2001 § 11a, the pertinent terms of which are:
"In the construction of the statutes of this state, the following rules shall be observed: 1. For any act enacted on or after July 1, 1989, unless there is a provision in the act that the act or any portion thereof or the application of the act shall not be severable, the provisions of every act or application of the act shall be severable. If any provision or application of the act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid, unless the court finds:
a. the valid provisions or application of the act are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or
b. the remaining valid provisions or applications of the act, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent."

51. *Ethics Comm'n of State of Okla. v. Cullison*, 1993 OK 37, ¶ 25, 850 P.2d 1069, 1077. *See also U.S. v. Jackson*, 390 U.S. 570, 585, n. 27, 88 S.Ct. 1209, 1218, n. 27, 20 L.Ed.2d 138 (1968).

52. *Cullison, supra* note 51, at ¶ 25, 850 P.2d at 1077 (a presumption of severability arises under the provisions of 75 O.S.2001 § 11a unless "(1) the non-offending portions [are] so connected with and dependent upon the unconstitutional portion that we cannot presume the Legislature would have enacted the former without the latter, or (2) that the non-offending portions are incapable of standing alone").

53. See the provisions of 75 O.S.2001 § 11a, *supra* note 50; *Cullison, supra* note 51, at ¶ 26, 850 P.2d at 1077.

54. *Norton v. Shelby County*, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178; *Cullison, supra* note 51 at ¶ 30, 850 P.2d at 1079.

exceptions to this rule. A declaration of a law's constitutional invalidity should not be applied so as to work a hardship or impose liability upon a public official or a private citizen who has acted in good faith and relied on the statute's validity before a court has declared it invalid or before another proper official has given notice that the statute fails to conform to the fundamental law.[55] When an invalid statute calls for a compulsory discharge of statutory duties by public officials who rely on the presumptive validity of statutes, this court may give its pronouncement purely prospective effect.[56] In the present case, both property owners and county assessors were entitled to rely upon the basic presumption that § 2817(I) was constitutional. We hence hold that today's decision invalidating the valuation formula contained in § 2817(I) will operate prospectively to property valuations made after the date this opinion becomes final.

## VII

## SUMMARY

¶ 32 Oklahoma's fundamental law mandates that real property be valued based upon its current use value. Departure from that command can be authorized only by a vote of the people. By providing a fixed and void formula for the valuation of all platted lots tied to the acquisition cost of the property without regard to the circumstances of the sale or the interval between the sale and the relevant assessment date and by freezing that valuation until the occurrence of a specified event, the terms of § 2817(I) fail to conform to the Constitutional command that

55. *Board of Comm'rs of Pottawatomie County v. A.C. Davis & Sons*, 1939 OK 33, ¶ 3, 86 P.2d 782, 783; *Gordon v. Conner*, 1938 OK 384, ¶ 8, 80 P.2d 322, 324; *Wade v. Board of Comm'rs of Harmon County*, 1932 OK 724, ¶ 18, 17 P.2d 690, 692.

56. *Cullison, supra* note 51, at ¶ 30, 850 P.2d at 1079; *General Motors v. Okla. County Bd. of Equalization*, 1983 OK 59, ¶ 11, 678 P.2d 233, 239 (supp'l. opinion on reh'g), cert. denied, 466 U.S. 909, 104 S.Ct. 1689, 80 L.Ed.2d 163 (1984); *Okla. Ed. Ass'n., Inc. v. Nigh*, 1982 OK 22, ¶ 20, 642 P.2d 230, 239.

1. Title 68 O.S. Supp.2004 § 2817(I) provides in pertinent part:

real property be assessed at its fair cash value.

## ¶ 33 THE COURT OF CIVIL APPEALS' OPINION IS VACATED AND THE TRIAL COURT'S JUDGMENT IS REVERSED

¶ 34 WINCHESTER, C.J., EDMONDSON, V.C.J., and HARGRAVE, OPALA, WATT, TAYLOR, and COLBERT, JJ., concur

¶ 35 KAUGER and REIF, JJ., dissent

KAUGER, J., with whom REIF, J., joins dissenting to the granting of certiorari:

¶ 1 The majority concludes that the provisions of 68 O.S. Supp.2004 § 2817(I) [1] violate the fair cash value standard mandated by art. 10, § 8(A)(2) of the Oklahoma Constitution. I would deny certiorari as improvidently granted.

¶ 2 Art. 10, § 8 of the Oklahoma Constitution governs assessment of property for ad valorem taxation, which is at issue here. Section 8 provides for real property valuation as follows:

... 2. Real property shall not be assessed for ad valorem taxation at a value less than eleven percent (11%) nor greater than thirteen and one-half percent (13.5%) of its fair cash value for the highest and best use for which such property was actually used, or was previously classified for use, during the calendar year next preceding the first day of January on which the assessment is made. The transfer of property without a change in its use classification shall not require a reassessment based exclusively

... [T]he fair cash value of a lot in any platted addition or a subdivision in a city, town or county zoned for residential, commercial, industrial or other use shall be deemed to be the total purchase price paid by the developer of the addition or subdivision for the land comprising the platted addition or subdivision divided by the number of lots contained in the addition or subdivision until the lot with the building or buildings located thereon shall have been conveyed to a bona fide purchaser or shall have been occupied other than as a sales office by the owner thereof, or shall have been leased, whichever event shall first occur.

upon the sale value of such property. In connection with the foregoing Legislature shall be empowered to enact laws defining classifications of use for the purpose of applying standard to facilitate uniform assessment procedures in this state. . . .

¶3 The clear language of this provision authorizes a valuation method based on the fair cash value for the highest and best use for which such property was **actually used or was previously classified during the previous calendar year**. Under the majority's interpretation, the only determination of the fair cash value of property is the fair market value—the value at which a purchaser would be willing to buy the property and a seller were willing to sell the property, subject to its current use. This interpretation completely ignores the second provision of § 8, which allows for an alternative valuation of how the property was previously classified for use. Clearly, county assessor standards for real property valuation are not limited to present use——previous use is also included. Because art. 10, § 8 mandates that the transfer of property without a change in its use classification "shall not" require a reassessment based exclusively on the sale value of property, 68 O.S. Supp.2004 § 2817 [2] is completely consistent with the Oklahoma Constitution. The majority misinterprets my writing. I am not saying that the property value should be locked indefinitely. Rather, that it *may* be valued at its previous use until such time it is re-sold for a new use, not valued at some hypothetical sales figure based on surrounding lots or what some non-existent hypothetical buyer *might* pay if such person existed.

---

2. Title 68 O.S. Supp.2004 § 2817, see note 1, supra.